UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

SENTINEL INSURANCE COMPANY, LTD.,

     Plaintiff,

          -vs-

CONRAD J. BENEDETTO, individually and doing
business as THE LAW OFFICES OF CONRAD J.
BENEDETTO, and JOHN GROFF,

     Defendants.

---

CONRAD J. BENEDETTO, THE LAW
OFFICES OF CONRAD J. BENEDETTO, and
JOHN GROFF,

     Plaintiffs,

          -vs-

SENTINEL INSURANCE COMPANY, LTD.,
JOHN DOES and ABC ENTITIES A-Z,

     Defendants.

---

Civil Action No. 19-cv-20142-RMB-AMD

Motion Return Date: September 8, 2020

[Document Electronically Filed]

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SENTINEL
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

Patrick D. Bonner Jr.
**MENZ BONNER KOMAR & KOENIGSBERG LLP**
One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.: (914) 949-0222/ Fax: (914) 997-4117
*Attorneys for Plaintiff Sentinel Insurance Company*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ......................................................................... iv

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF FACTS ......................................................................... 3

    A.   THE PARTIES TO THIS COVERAGE ACTION ................................. 3

    B.   THE UNDERLYING ACTIONS........................................................ 4

    C.   THE INSURANCE POLICIES...........................................................5

    D.   PROCEDURAL HISTORY..............................................................12

ARGUMENT ............................................................................................13

I.     STANDARD OF REVIEW..................................................................13

II.    THE SENTINEL POLICIES DO NOT PROVIDE COVERAGE FOR THE
      UNDERLYING ACTIONS ............................................................. 15

    A.   THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR
         "BODILY INJURY" .................................................................15

    B.   THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR
         "PROPERTY DAMAGE" ...........................................................17

    C.   THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR
         "PERSONAL AND ADVERTISING INJURY"...............................18

III.   THERE IS NO COVERAGE BECAUSE THERE HAS BEEN
      NO "OCCURRENCE" .................................................................19

IV.   THE CLAIMS IN THE UNDERLYING ACTIONS FALL WITHIN CLEAR AND
      UNAMBIGUOUS POLICY EXCLUSIONS ....................................21

    A.   THE EMPLOYER'S LIABILITY EXCLUSION PRECLUDES COVERAGE .........................21

    B.   THE POLICIES EXCLUDE COVERAGE FOR "PERSONAL AND ADVERTISING
         INJURY" FOR "EMPLOYMENT-RELATED PRACTICES" ..............................22

    C.   MR. GROFF'S ALLEGED ACTIONS FALL WITHIN THE EXCLUSION
         FOR "EXPECTED OR INTENDED INJURY" ...............................24

CONCLUSION.................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**C**ASES

*Adron, Inc. v. Home Ins. Co.*,
292 N.J. Super. 463, 679 A.2d 160 (App. Div. 1996) ...................................................15

*American Motorists Ins. Co. v. L-C-A Sales Co.*,
713 A.2d 1007 (N.J. 1998)...........................................................................................22

*Arc Water Treatment Co. of Pennsylvania v. Hartford Cas. Ins. Co.*,
2002 WL 32392683 (E.D. Pa. Mar. 27, 2002)..............................................................18

*Baughman v. U.S. Liab. Ins. Co.*,
662 F. Supp. 2d 386(D.N.J. 2009) ...............................................................................13

*Callo v. Allstate Ins. Co.*,
2010 WL 4923031 (N.J. Super. Ct. App. Div. Dec. 6, 2010)........................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................13

*Cumberland Mut. Fire Ins. Co. v. Murphy*,
183 N.J. 344, 873 A.2d 534 (2005)..........................................................................19, 25

*Danek v. Hommer*,
28 N.J. Super. 68, 100 A.2d 198 (App. Div. 1953),
*aff'd*, 15 N.J. 573, 105 A.2d 677 (1954) .......................................................................14

*Doto v. Russo*,
140 *N.J.* 544, 659 A.2d 1371 (1995)..............................................................................14

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*,
998 F. Supp. 447 (D.N.J. 1988) ...................................................................................17

*Flomerfelt v. Cardiello*,
202 N.J. 432, 997 A.2d 991 (2010)................................................................................14

*Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Co.*,
98 N.J. 18, 483 A.2d 402 (1984)...................................................................................14

*Hartford Ins. Grp. v. Marson Const. Corp.*,
186 N.J. Super. 253, 452 A.2d 473 (App. Div. 1982) ...................................................15

*Kline v. Kemper Grp.*,
826 F. Supp. 123 (M.D. Pa. 1993),
 *aff'd*, 22 F.3d 301 (3d Cir. 1994) ................................................................18, 20

*Lapeka, Inc. v. Sec. Nat. Ins. Co.*,
814 F. Supp. 1540 (D. Kan. 1993) ...............................................................17, 18

*Longobardi v. Chubb Ins. Co. of New Jersey*,
121 N.J. 530, 582 A.2d 1257 (1990) ...................................................................14

*Mroz v. Smith*,
261 N.J. Super. 133, 617 A.2d 1259 (App. Div. 1992) ....................................20, 25, 26

*Polarome Int'l, Inc. v. Greenwich Ins. Co.*,
404 N.J. Super. 241, 961 A.2d 29 (App. Div. 2008) ...........................................15

*Perez v. El Bambino Bar/Club*,
2017 WL 22081472 (N.J. App. Div. July 23, 2007) ............................................14

*Phibro Animal Health Corp. v. National Union Fire Ins. Co. of Pittsburgh*, ,
446 N.J. Super. 419, 142 A.3d 761 (App. Div. 2016) ..........................................19

*President v. Jenkins*,
180 N.J. 550, 853 A.2d 247 (2004) .....................................................................13

*Princeton Ins. Co. v. Chunmuang*,
151 N.J. 80,  698 A.2d 9 (1997) ..........................................................................14

*Scottsdale Ins. Co. v. Scholl-Fassnacht*,
2000 WL 875693 (E.D. Pa. June 26, 2000) .........................................................22

*Scottsdale Ins. Co. v. Fassnacht*,
261 F.3d 493 (3d Cir. 2001) .................................................................................22

*Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*,
210 N.J. 597, 46 A.3d 1272 (2012) .....................................................................13

*SL Indus., Inc. v. American Motorists Ins. Co.*,
128 N.J. 188, 607 A.2d 1266 (1992) ...............................................................16, 21

*State Farm Fire & Cas. Co. v. Dado's Cafe, Inc.*,
421 F. Supp. 3d 720 (E.D. Mo. 2019) .................................................................20

*System Design Concepts, Inc. v. CA Ins. Co.*,
2006 WL 2191963 (N.J. App. Div. Aug. 4, 2006) ...............................................24

*The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.,*
2015 WL 7760179 (D.N.J. Dec. 2, 2015) ...................................................22

*United Pac. Ins. Co. v. First Interstate Bancsystems of Montana, Inc.,*
690 F. Supp. 917 (D. Mont. 1988)...........................................................18

*U.S. Liab. Ins. Grp. v. Sec. Ins. Co. of Hartford*,
381 N.J. Super. 211, 885 A.2d 477 (App. Div. 2005) ..............................16

*Voorhees v. Preferred Mut. Ins. Co.*,
128 N.J. 165, 607 A.2d 1255 (1992)....................................................14, 25

*Walker Rogge, Inc. v. Chelsea Title & Guar. Co*.,
116 N.J. 517, 562 A.2d 208 (1989)..........................................................14

*Zacarias v. Allstate Ins. Co.*,
168 N.J. 590, 775 A.2d 1262 (2001)..........................................................13

## S<span></span>TATUTES AND O<span></span>THER A<span></span>UTHORITIES

*Black's Law Dictionary* at 1456 (6th ed. 1990)..........................................17

Fed. R. Civ. P. 56....................................................................................1

Fed. R. Civ. P. 56(c) ...............................................................................13

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................13

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel" or "Plaintiff") respectfully submits this Memorandum of Law, together with its Statement of Material Facts, the Declaration of Laianna C. Hartley ("Hartley Dec."), and the Declaration of Patrick D. Bonner, Jr. ("Bonner Dec."), in support of its motion, pursuant to F.R.C.P. 56, for an Order (i) declaring that Sentinel does not have a duty to defend or indemnify Conrad J. Benedetto ("Mr. Benedetto"), The Law Offices of Conrad J. Benedetto ("Benedetto Firm"), and John Groff ("Mr. Groff") (collectively, the "Defendants") in connection with two (2) underlying employment-related discrimination lawsuits filed in the Superior Court of the State of New Jersey, and (ii) granting summary judgment dismissing the Complaint of Mr. Benedetto, the Benedetto Firm and Mr. Groff in this consolidated action with prejudice.

## PRELIMINARY STATEMENT

This consolidated action is an insurance coverage dispute in which the Defendants erroneously seek insurance coverage for two underlying employment-related discrimination lawsuits. The fundamental and fatal flaw in Defendants' case is that the applicable Sentinel general liability insurance policies cover damages claims for *bodily injury, property damage, and personal and advertising injury* – not employment-related claims – and the plaintiffs in the underlying actions do not seek such damages. In addition, even if they did, the employment- and discrimination-related claims in those actions would fall within clear and unambiguous policy exclusions, thereby precluding coverage. For these reasons, the Sentinel insurance policies do not provide coverage for the claims in these underlying actions, and Sentinel is entitled to summary judgment as a matter of law.

The present coverage action arises out of the mass shooting that occurred at the Pulse Nightclub in Orlando, Florida in June 2016. In the aftermath of that tragedy, certain individuals

who were present at the massacre retained Mr. Benedetto and the Benedetto Firm to represent

their interests in a lawsuit for damages.  After retaining the Benedetto Firm, these new clients

accompanied Mr. Groff, the firm's Office Manager, on a tour to visit and recruit other mass

shooting survivors, including victims of the October 2017 Mandalay Bay hotel massacre in Las

Vegas.  Mr. Groff allegedly began to make unwanted sexual advances and threats toward the

clients, and those individuals subsequently brought employment-related lawsuits against Mr.

Benedetto, the Benedetto Firm, and Mr. Groff, captioned *Brian Nunez v. The Law Offices of*

*Conrad J. Benedetto, et al.,* Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.), and

*John Doe v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-004588-18 (N.J.

Super. Ct., Camden Co.) (the "Underlying Actions").  It is these two lawsuits for which

Defendants seek defense and indemnity coverage from Sentinel.

The plaintiffs' claims in the Underlying Actions make it abundantly clear that there is no

coverage under the Sentinel insurance policies.  The complaints in those actions allege

discrimination and retaliation under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-

1, *et. seq.,* and related employment claims, as a result of Mr. Groff's unwanted sexual advances,

harassment, and solicitation of sexual relations in return for legal services.  Specifically, those

plaintiffs allege that Mr. Groff recruited them to become clients of the firm "almost

immediately" following their survival of the Pulse Nightclub shooting, and that after signing up

as clients in early 2017, Mr. Groff treated them like employees to help recruit other victims for

representation by the Benedetto Firm.  At the same time, he persistently sexually harassed and

threatened them, and when the clients rebuffed Mr. Groff's sexual advances, he allegedly

retaliated against them and threatened to withhold money for food, lodging and transportation.

The Sentinel insurance policies at issue in this lawsuit do not cover such claims.  Instead, these are general liability insurance policies that apply only to claims for damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period, or to damages for "personal and advertising injury," as defined therein.[1]  Here, the plaintiffs in the Underlying Actions simply do <u>not</u> seek such damages, and that is a *complete answer* to Defendants' claims in this coverage case.

But even if the underlying complaints did allege such damages – which they do not – any such claims would fall within clear and unambiguous policy exclusions for employer's liability as related to bodily injury claims, for personal and advertising injury in connection with employment-related practices, and for intentional acts causing "expected or intended injury."

For these reasons, this Court should declare that Sentinel has no duty to defend or indemnify Defendants with respect to the Underlying Actions, grant summary judgment in Sentinel's favor, and dismiss this action with prejudice.

## STATEMENT OF FACTS

### A.   THE PARTIES TO THIS COVERAGE ACTION

Plaintiff Sentinel Insurance Company, Ltd. is a foreign corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.  Bonner Dec. Ex. A ¶ 3.  Mr. Benedetto is an individual and attorney at law admitted to practice in the State of New Jersey who is doing business as and/or is the sole owner and principal of the Benedetto Firm, and is a citizen of the State of Pennsylvania.  *Id*. Ex. G ¶¶ 4, 5.  The Benedetto Firm is a law firm with locations in New Jersey and Pennsylvania.  *Id*. Ex. G ¶ 5.  At all relevant

---

[1] Plaintiffs did not purchase and Sentinel did not issue any employment practices liability ("EPL") policies to them, which typically respond to claims for wrongful acts in the employment context such as discrimination, sexual harassment, wrongful discharge, and employment-related retaliation.

times, Mr. Groff was employed as the office manager of the Benedetto Firm and a citizen of New Jersey. *Id*. Ex. A ¶ 6.

**B.    THE UNDERLYING ACTIONS**

This coverage action relates to two underlying lawsuits filed in the Superior Court of the State of New Jersey captioned *Brian Nunez v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.) ("Nunez Action"), and *John Doe v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-004588-18 (N.J. Super. Ct., Camden Co.) ("Nava Action").[2]  Hartley Dec. Exs. F and G.

Both the Nunez Action and the Nava Action seek to recover damages and other relief for sexual harassment and discrimination due to gender under the New Jersey Law Against Discrimination ("NJLAD"), retaliation/improper reprisal under NJLAD, violations of the New Jersey Consumer Fraud Act, negligent hiring, negligent retention, negligent training, negligent supervision, negligence, and gross negligence.  Hartley Dec. Exs. F and G.  The two lawsuits seek reinstatement of employment and benefits, back pay and benefits, front pay and benefits, reinstatement, equitable relief, as well as compensatory and punitive damages, lost wages, and attorneys' fees and costs.  Hartley Dec. Exs. F and G Counts Two and Three at Wherefore Clauses.  While the Complaints in both the Nunez Action and the Nava Action allege and seek damages for emotional distress, neither alleges or seeks damages for any bodily injuries or physical manifestations of symptoms.  Hartley Dec. Exs. F and G.

In particular, the complaints in the Nunez and Nava Actions allege the following:

- The Nunez and Nava Actions seek "to recover damages and other relief for discrimination and retaliation."   Hartley Dec. Ex. F, ¶ 10; Ex. G, ¶ 11.

- Groff solicited them to be a client of the Benedetto Firm following the June 12,

---

[2] The Underlying Action by Javier Nava was originally filed anonymously by him as "John Doe" and is now captioned *Javier Nava v. The Law Offices of Conrad J. Benedetto, et al.*

2016 Pulse Nightclub shooting in Florida.  *Id*. Ex. F, ¶¶ 13-16; Ex. G, ¶¶ 14-17.

- Nunez and Nava retained the Benedetto Firm to represent their interests in connection with damages stemming from the Pulse Nightclub shooting.  *Id*. Ex. F ¶ 17; Ex. G. ¶ 18.

- Soon after Nunez and Nava retained the firm, Groff began texting them for purposes unrelated to their respective cases and to groom each for Groff's sexual harassment.  *Id*. Ex. F. ¶ 20; Ex. G. ¶ 22.

- Following the October 1, 2017 Route 91 Harvest Music Festival showing in Las Vegas, Defendants used Nunez and Nava to recruit victims of the Las Vegas shooting, including convincing Nunez and Nava to travel to Nevada and California to speak to other shooting survivors to convince them to retain the Benedetto Firm and Benedetto.  *Id*. Ex. F ¶¶ 22-24; Ex. G ¶¶ 24-26.

- Groff represented to Nunez and Nava that Groff, the Benedetto Firm and Benedetto would pay for lodging, transportation and food expenses.  *Id*. Ex. F. ¶ 25; Ex. G. ¶ 27.

- Groff treated Nunez and Nava like employees, including pressuring Nunez and Nava to record a promotional video.  *Id*. Ex. F ¶¶ 28, 29; Ex. G ¶¶ 30, 31.

- Groff began flirting with and sexually harassing Nunez and Nava, and when Nunez and Nava rebuked the advances, Groff threatened to withhold money for lodging, transportation and food.  *Id*. Ex. F ¶¶ 32, 33; Ex. G ¶¶ 33, 34.

- Groff repeatedly demanded sexual favors and retaliated when Nunez and Nava rejected him.  *Id*. Ex. F ¶ 41; Ex. G ¶ 37.

- Groff sent Nunez and Nava sexually explicit texts to entice them into a sexual relationship and frequently discussed getting Nunez and Nava drunk so he could force himself sexually upon Nunez and Nava.  *Id*. Ex. F ¶¶ 42-46; Ex. G ¶¶ 44-70.

- Groff had a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Benedetto and the Benedetto Firm were aware, including a prior lawsuit alleging nearly identical sexual harassment claims.  *Id*. Ex. F ¶¶ 50-59; Ex. A; Ex. G  ¶¶ 72-73; Ex. A.

**C.**    **THE INSURANCE POLICIES**

It is undisputed that Sentinel issued the following policies to Conrad Benedetto ("Sentinel

Policies"): (1) Policy 38 SBA BX9035 for the period October 12, 2015 to October 12, 2016; (2)

Policy 38 SBA BX9035 for the period October 12, 2016 to October 12, 2017; (3) 38 SBA

BX9035 for the period October 12, 2017 to October 12, 2018; (4) 38 SBA BX9035 for the period October 12, 2018 to October 12, 2019; and (5) 38 SBA BX9035 for the period October 12, 2019 to October 12, 2020.[3] *See* Hartley Dec. Exs. A-E.

The Sentinel Policies identify "CONRAD BENEDETTO DBA LAW OFFICES OF CONRAD J. BENEDETTO" as a named insured on the declarations page. *Id*. at Form SS 12 35 03 12 SEQ. NO. 001. The declarations further provide the "Description of Business" as "Lawyers & Law Firms." *Id*. at Form SS 00 02 12 06.

The Sentinel Policies contain the following relevant policy provisions applicable to the business liability coverage part:

## BUSINESS LIABILITY COVERAGE FORM

\*\*\*

**A.   COVERAGES**
   **1.   BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY
         DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**
   a.  We will pay those sums that the insured becomes legally obligated to pay
       as damages because of "bodily injury", "property damage" or "personal and
       advertising injury" to which this insurance applies. We will have the right
       and duty to defend the insured against any "suit" seeking those damages.
       However, we will have no duty to defend the insured against any "suit"
       seeking damages for "bodily injury", "property damage" or "personal and
       advertising injury" to which this insurance does not apply.

       We may, at our discretion, investigate any "occurrence" or offense and
       settle any claim or "suit" that may result.

\*\*\*

   b.  This insurance applies:

---

[3] Defendants' Complaint also identifies the two policies for the periods October 12, 2018 to October 12, 2019 and October 12, 2019 to October 12, 2020. However, these policies are not implicated because the Underlying Actions allege activity beginning in 2016 and the Underlying Lawsuits were commenced in October 2018. Regardless, these Sentinel Policies contain the same provisions as the earlier Sentinel Policies that bar coverage. *See* Hartley Dec. Exs. F, G.

     (1) To "bodily injury" and "property damage" only if:

        (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (b) The "bodily injury" or "property damage" occurs during the policy period; and

        (c) Prior to the policy period, no insured listed under Paragraph 1. of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

     (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

  c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section C. – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

     (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 1-2 of 24.


***


**C.     WHO IS AN INSURED**

1.     If you are designated in the Declarations as:

a.     An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

. . .

2.     Each of the following is also an insured:

**a.     Employees And Volunteer Workers**

Your . . . "employees" . . . , but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business…

However, none of these "employees" . . . are insureds for:
(1) "Bodily injury" or "personal and advertising injury":
    (a) To . . . a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 10 of 24.

The Business Liability Coverage Form includes the following definitions:

## G.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS

***

5. "Bodily injury" means physical:
   a.  Injury;
   b.  Sickness; or
   c.  Disease
sustained by a person and, if arising out of the above, mental anguish or death at any time.

***

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

***

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

***

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

8

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral, written or electronic publication of material that violates a person's right of privacy;

    f.  Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

    g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement";

    h.  Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.[4]

***

20. "Property damage" means:

    h.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    i.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

***

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Volunteer worker" means a person who:
    a.  Is not your "employee";
    b.  Donates his or her work;
    c.  Acts at the direction of and within the scope of duties determined by you; and

---

[4] Section 17.h of this definition is deleted pursuant to the amendatory endorsement noted below. *See* Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at page 2 of 2.

     d.  Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 20-23 of 24.

Section 17.h. of the Business Liability Coverage Form, shown above, is modified by

Business Liability Coverage Form Amendatory Endorsement, as follows:

**BUSINESS LIABILITY COVERAGE FORM**
**AMENDATORY ENDORSEMENT**

\*\*\*

F. Subparagraph 17.h. of Section G, **Liability and Medical Expenses Definitions**
[is] deleted.

Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at page 2 of 2.

The Business Liability Coverage Form also contains the following exclusions applicable

to the claims at issue:

**B.**    **EXCLUSIONS**

    1.   Applicable To Business Liability Coverage

This insurance does not apply to:

a. Expected Or Intended Injury

    (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

    (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\*\*\*

e. Employer's Liability
    "Bodily injury" to:
    (1) An "employee" of the insured arising out of and in the course of:
        (a)  Employment by the insured; or
        (b)  Performing duties related to the conduct of the insured's business . . . .

\*\*\*

10

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of that injury.

\*\*\*

r. Employment-Related Practices[5]
"Bodily injury" or "personal and advertising injury" to:
(1) A person arising out of any:
    (a)  Refusal to employ that person;
    (b)  Termination of that person's employment; or
    (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

\*\*\*

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of that injury.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 9 of 24.

The Business Liability Coverage Form Amendatory Endorsement modifies the foregoing exclusion as follows:

B. Subparagraph 1.r. of Section B. Exclusions is deleted and replaced with the following:
    **r. Employment-Related Practices**
    "Personal and advertising injury" to:
    (1) A person arising out of any "employment-related practices";

\*\*\*

This exclusion applies:
    (a)  Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

---

[5] This subparagraph was replaced, as noted below.

(b) Whether the insured may be liable as an employer or in any other capacity; and

(c) To any obligation to share damages with or replay someone else who must pay damages because of the injury.

Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at pages 1-2 of 2.

### D.   PROCEDURAL HISTORY

On November 13, 2019, Sentinel commenced this action by filing its Complaint seeking a declaratory judgment that Sentinel has no duty to defend or indemnify Defendants in connection with the Underlying Actions. Bonner Dec. Ex. A. Sentinel's action was assigned civil action no. 19-cv-20142. Defendants agreed to waive service of process and Attorney Anthony Scordo on behalf of the Optimum Law Group, P.C. executed Waivers of Summons on behalf of all Defendants. *Id.* Ex. B.

On December 14, 2019, Defendants filed a competing action against Sentinel in the Superior Court of the State of New Jersey, Law Division, Burlington County. Bonner Dec. Ex. C. Defendants' complaint seeks a declaration that Sentinel has a duty to defend and indemnify Defendants in connection with the Underlying Actions and also included causes of action seeking damages for breach of contract and bad faith. *Id.*

On January 15, 2020, Sentinel removed Defendants' action to this Court and it was assigned civil action no. 20-cv-483. Bonner Dec. Ex. D. On January 22, 2020, Sentinel filed its Answer and Separate Defenses. *Id.* Ex. E. The parties subsequently appeared at an initial conference on February 18, 2020, and Sentinel's unopposed oral application to consolidate the cases was granted and the cases were consolidated for all purposes under civil action no. 19-cv-20142. *Id.* Ex. F. On June 23, 2020, Mr. Benedetto and the Benedetto Firm filed an Answer. *Id.* Ex. G.

On June 5, 2020, Mr. Groff filed a motion to dismiss (ECF No. 25) that was administratively terminated for Mr. Groff's failure to submit a pre-motion letter (ECF Nos. 26, 28).  Subsequently the parties submitted pre-motion letters  (ECF Nos. 29, 31, 32) and a Zoom video conference was scheduled for July 8, 2020 (ECF No. 33).  Counsel for Mr. Groff failed to appear at that conference and the Court issued a text order requiring all pleadings and dispositive motions to be filed within 30 days (ECF No. 36).

## ARGUMENT

### I. STANDARD OF REVIEW

Where there is no genuine dispute as to any material fact, a movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of informing the court of the basis for summary judgment and identifying portions of the record, including pleadings, discovery and any affidavits, that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp,* 477 U.S. at 323 (1986); Fed. R. Civ. P. 56(c)(1)(A).

In diversity actions, state law governs the interpretation of an insurance contract. *Baughman v. U.S. Liab. Ins. Co.,* 662 F. Supp. 2d 386, 393 n. 2 (D.N.J. 2009).  In New Jersey, an insurance policy is a form of contract and the interpretation of contract language is a question of law.  *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605, 46 A.3d 1272, 1276 (2012) (internal citations omitted).  New Jersey courts give insurances policies "their plain, ordinary meaning."  *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595, 775 A.2d 1262, 1264 (2001).  Where the terms of the policy are clear "courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."  *President v. Jenkins*, 180 N.J. 550, 562, 853 A.2d 247, 254 (2004).  "In the absence of an ambiguity,

a court should not engage in a strained construction to support the imposition of liability."

*Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537, 582 A.2d 1257, 1260 (1990).

An insurer's "duty to defend is determined by comparing the allegations in the complaint

with the language of the policy." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173, 607

A.2d 1255, 1259 (1992). In making the comparison, "the complaint should be laid alongside the

policy and a determination made as to whether, if the allegations are sustained, the insurer will

be required to pay the resulting judgment, and in reaching a conclusion, doubts should be

resolved in favor of the insured." *Danek v. Hommer*, 28 N.J. Super. 68, 77, 100 A.2d 198, 203

(App. Div. 1953), *aff'd*, 15 N.J. 573, 105 A.2d 677 (1954). However, "courts should not write

for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v.*

*Chelsea Title & Guar. Co*., 116 N.J. 517, 529, 562 A.2d 208, 214 (1989). "The duty to defend

comes into being when the complaint states a claim constituting a risk insured against … [and]

extends only to claim on which there would be a duty to indemnify in the event of a judgment

adverse to the insured." *Perez v. El Bambino Bar/Club,* 2017 WL 22081472, at *2 (N.J. App.

Div. July 23, 2007), quoting *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Co.,* 98 N.J. 18,

22, 483 A.2d 402, 405 (1984).

Exclusions in an insurance policy are likewise subject to the same rules of policy

interpretation. "Exclusions are presumptively valid and will be given effect if 'specific, plain,

clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang*, 151 N.J.

80, 95, 698 A.2d 9, 17 (1997), quoting *Doto v. Russo,* 140 *N.J.* 544, 559, 659 A.2d 1371, 1378

(1995); see also *Flomerfelt v. Cardiello*, 202 N.J. 432, 441, 997 A.2d 991, 996 (2010) (same).

Insurance policy exclusions are narrowly construed and the burden rests with the insurer to bring

the case within the exclusion. *Flomerfelt*, 202 N.J. 432 at 442. However, "courts must be

careful not to disregard the clear import and intent of a policy's exclusion" and should not engage in "any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Id.* (internal quotations and citations omitted). The burden is initially on Defendants to bring the claim within the basic terms of the policy. *Adron, Inc. v. Home Ins. Co.*, 292 N.J. Super. 463, 473, 679 A.2d 160, 165 (App. Div. 1996).

Moreover, an insurer's duty to defend is broader than its duty to indemnify. *Polarome Int'l, Inc. v. Greenwich Ins. Co.*, 404 N.J. Super. 241, 272, 961 A.2d 29, 47 (App. Div. 2008). Accordingly, where no duty to defend exists, there can be no duty to indemnify. *Hartford Ins. Grp. v. Marson Const. Corp.,* 186 N.J. Super. 253, 260, 452 A.2d 473, 476 (App. Div. 1982).

## II.   THE SENTINEL POLICIES DO NOT PROVIDE COVERAGE FOR THE UNDERLYING ACTIONS

Coverage under the Sentinel Policies only extends to such sums as "the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 1 of 24. Defendants cannot bring any of the underlying claims—seeking damages for discrimination, retaliation, and harassment by Mr. Groff—within the scope of coverage provided by the foregoing Insuring Agreement, because the Underlying Actions simply do not allege or seek any damages because of "bodily injury," "property damage," or "personal and advertising injury."

### A.   THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR "BODILY INJURY"

Plaintiffs in the Underlying Actions seek damages for discrimination, retaliation, and harassment by Mr. Groff. Plaintiffs do not seek any damages for bodily injury. The Sentinel Policies define "bodily injury" as physical injury, sickness, or disease. Hartley Dec. Exs. A-E at

Form SS 00 08 04 05 at page 20.  Absent an allegation of physical injury, sickness or disease, there is no coverage, and allegations of harassment, discrimination, or retaliation do not constitute "bodily injury."

In *SL Indus., Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266 (1992), the insured brought a declaratory judgment action seeking coverage for a former employee's action for age discrimination, fair labor, and fraudulent misrepresentation claims.  The employee claimed that he suffered "physical and mental pain and suffering, including humiliation, loss of self-esteem, irritability and sleeplessness" and sought damages for the same.  *SL Indus., Inc.,* 128 N.J. at 195, 607 A.2d at 1270 (1992).   The policy at issue defined "bodily injury" as "bodily injury, sickness or disease."  *Id*., 128 N.J. at 194, 607 A.2d at 1269 (1992).  The New Jersey Supreme Court held "that in the context of purely emotional distress, without physical manifestations, the phrase 'bodily injury' is not ambiguous.  Its ordinary meaning connotes some sort of physical problem."  *Id.*, 128 N.J. at 202, 607 A.2d at 1274 (1992).  *See also U.S. Liab. Ins. Grp. v. Sec. Ins. Co. of Hartford*, 381 N.J. Super. 211, 216, 885 A.2d 477, 481 (App. Div. 2005) (discharged employee's claims did not involve bodily injury within meaning of employer's policy where "no objective physical or bodily injuries are alleged to have resulted from the depression, stress or anxiety" alleged).[6]

Here, the underlying plaintiffs do not allege any physical symptoms whatsoever in connection with their claims asserted against Defendants.  Accordingly, based on the plain and unambiguous terms of the Sentinel Policies, there is no basis for coverage given the absence of damages being sought in the Underlying Actions for any alleged physical or bodily injury.

---

[6] The definition of "bodily injury" includes "mental anguish or death" but only if it arises out of physical injury, sickness or death.  Absent actual physical injury, emotional distress is not covered by the Sentinel Policies.

**B.   THE UNDERLYING COMPLAINTS DO NOT
      SEEK DAMAGES FOR "PROPERTY DAMAGE"**

The Sentinel Policies define property damage as "physical injury to tangible property" or

"loss of use of tangible property that is not physically injured." Hartley Dec. Exs. A-E at Form

SS 00 08 04 05 at page 23. "Tangible property" includes real and personal property "that has

physical form and substance and is not intangible. That which may be felt or touched, and is

necessarily corporeal . . . *Lapeka, Inc. v. Sec. Nat. Ins. Co.,* 814 F. Supp. 1540, 1549 (D. Kan.

1993) (quoting *Black's Law Dictionary* at 1456 (6th ed. 1990)).

With a nod to the paucity of prior New Jersey caselaw defining "loss of tangible

property," this Court in 1998 noted: "CGL policies throughout the country generally contain the

same language and definitions, and the evolution and inclusion of the phrase in the definition of

property damage is clear.  In 1973, insurers revised their definition of 'property damage' and

adopted the current two-prong definition because the old definition, 'injury to or destruction of

tangible property,' resulted in inconsistent interpretations of the phrase—some courts found that

the definition included non-physical injuries while other courts denied coverage unless physical

contact between the insured and the injured property existed."  *Elizabethtown Water Co. v.

Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 453-54 (D.N.J. 1988) (noting that "[t]he classic

example of a loss of use injury is a case in which a manufacturer of construction cranes sells a

defective crane which collapses in front of a restaurant, thereby impairing the restaurant's

income.").

Here, Plaintiffs in the Underlying Action do not allege or seek damages for physical

injury to tangible property or for loss of use of any tangible property.  Rather, underlying

plaintiffs seek damages for sexual harassment and discrimination, retaliation/improper reprisal.

Hartley Dec. Exs. F, G.  Such causes of action quite simply are not tantamount to allegations of

property damage to which liability coverage applies. *See Kline v. Kemper Grp.*, 826 F. Supp. 123, 130 (M.D. Pa. 1993), *aff'd,* 22 F.3d 301 (3d Cir. 1994) ("back pay and allege[d] loss of employment opportunities, etc. as a result of the termination… do not fall within the definition of property damage in the insurance context."); *Arc Water Treatment Co. of Pennsylvania v. Hartford Cas. Ins. Co.*, 2002 WL 32392683, at *3 (E.D. Pa. Mar. 27, 2002) ("back pay, lost earnings and fringe benefits, emotional distress damages, punitive damages, and attorneys fees as a result of his constructive discharge, such losses do not fall within the definition of 'property damage" in the insurance context"); *Lapeka, Inc. v. Sec. Nat. Ins. Co.,* 814 F. Supp. 1540, 1549 (D. Kan. 1993) (implied contractual employment not "tangible property"); *United Pac. Ins. Co. v. First Interstate Bancsystems of Montana, Inc.,* 690 F. Supp. 917, 918 (D. Mont. 1988) (physical and emotional stress, humiliation from wrongful termination are not "property damage" or "bodily injury").

Accordingly, insofar as the underlying complaints at issue do not allege or seek damages for injury to or loss of use of tangible property (whether real or personal), there is no "property damage" at issue for which coverage potentially may be provided under the Sentinel Policies.

### C. THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR "PERSONAL AND ADVERTISING INJURY"

The Sentinel Policies specifically enumerate the offenses that constitute "personal and advertising injury" for which coverage is afforded (to the extent not otherwise excluded). Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 23; Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at page 2 of 2.  The seven categories of enumerated torts, none of which is implicated here, are – a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord

or lessor; d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral, written or electronic publication of material that violates a person's right of privacy; and f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement;" and g. infringement of copyright slogan, or title of any literary or artistic work, in your "advertisement."  Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 22-23.

The complaints in the Underlying Actions do not allege any of these offenses or assert causes of actions for the same.  Consequently, there is no "personal and advertising injury" for which the Sentinel Policies may provide coverage with respect to the underlying plaintiffs' claims.

**III.    THERE IS NO COVERAGE BECAUSE THERE HAS BEEN NO "OCCURRENCE"**

To fall within the Sentinel Policies' coverage for "bodily injury" or "property damage," a triggering event—an "occurrence"—is required.  *See* Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 1 of 24.  Because there has been no "occurrence" as that term is defined under the Sentinel Policies, there is no coverage for the Underlying Actions.

Under the policies, an occurrence is "*an accident*, including continuous or repeated exposure to substantially the same general harmful conditions."  Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 22 of 24 (emphasis added).  "Occurrence" means a nonintentional act, or the unintended result or accident of an intentional act.  *See Phibro Animal Health Corp. v. National Union Fire Ins. Co. of Pittsburgh*, , 446 N.J. Super. 419, 429–30, 142 A.3d 761, 767 (App. Div. 2016); *Cumberland Mut. Fire Ins. Co. v. Murphy,* 183 N.J. 344, 349, 873 A.2d 534, 537 (2005) (concurring majority opinion) ("a 'covered accident' includes the unintended consequences of an intentional act, but not an injury that is, itself, intended").  Therefore, an "occurrence" cannot be an intentional act that leads to a clear or natural result or consequences.

19

The New Jersey Appellate Division has applied this reasoning in a case alleging harassment and discrimination, based upon sexual advances followed by "numerous harassing and annoying telephone calls" made to a co-employee.  *Mroz v. Smith*, 261 N.J. Super. 133, 134, 617 A.2d 1259, 1260 (App. Div. 1992).  The Court in *Mroz* found that the employee's actions constituted "intentional harassment," because the alleged injuries were "intended or expected" from the perspective of the insured and were "particularly reprehensible."  *Id.,* 261 N.J. Super. at 138, 617 A.2d at 1262.  "It is clear, under the bare allegations of the complaint, that not only was there no accidental occurrence or negligent tort, but considering the allegations of the numerous occurrences involved, [defendant's] actions, if the allegations are true, could only have been intentional both in purpose and result." *Id.*, 261 N.J. Super. at 138, 617 A.2d at 1262; *see also Kline v. Kemper Grp.,* 826 F. Supp. 123 (M.D. Pa. 1993), *aff'd,* 22 F.3d 301 (3d Cir. 1994) (no coverage in age discrimination claims based on termination; court considered coverage and exemption together); *State Farm Fire & Cas. Co. v. Dado's Cafe, Inc.,* 421 F. Supp. 3d 720 (E.D. Mo. 2019) (no "occurrence" in a wrongful termination, discrimination, harassment, and retaliation case; and further precluded by exemptions for intentional act, because injuries were not "unforeseen and unplanned"; nor caused by managerial negligence notwithstanding that actual complaints were made but ignored).

Here, the Underlying Actions plainly and directly allege repeated intentional acts by Mr. Groff.  Indeed, they allege "numerous harassing and annoying" acts which can only be deemed "particularly reprehensible" as in *Mroz*.  Underlying Plaintiffs assert that Mr. Groff "solicited" plaintiffs as clients; "began testing . . . and to groom" plaintiffs for sexual harassment; "convinced" plaintiffs to "travel" and "speak to other shooting survivors"; "treated [plaintiffs] like . . . employee[s]"; "pressured" plaintiffs to record a video; "began flirting with and sexually

harassing" plaintiffs and "threatened to withhold money" when advances were rebuked;

"repeatedly demanded sexual favors and retaliated" when rejected; and sent "sexually explicit

texts to entice [plaintiffs] into a sexual relationship and frequently discussed getting [plaintiffs]

drunk so he could force himself sexually upon [them]."  Hartley Dec. Exs. F, G.

Because there is no basis for an "accidental" occurrence that could fall within the scope

of coverage provided by the policy, coverage is precluded unless the "extent of the injuries was

improbable." *See SL Indus., Inc. v. Am. Motorists Ins. Co.,* 128 N.J. 188, 212, 607 A.2d 1266,

1278 (1992).  Here, even a cursory reading of the underlying complaints demonstrates that there

is no coverage for the claims at issue because Mr. Groff's acts were intentional, both in act and

result.

## IV.   THE CLAIMS IN THE UNDERLYING ACTIONS FALL WITHIN CLEAR AND UNAMBIGUOUS POLICY EXCLUSIONS

### A.   THE EMPLOYER'S LIABILITY EXCLUSION PRECLUDES COVERAGE

Even assuming the plaintiffs in the Underlying Actions had stated a claim for "bodily

injury," which they have not, such claim would be excluded from coverage under the Employer's

Liability Exclusion.  Plaintiffs in the Underlying Actions assert that Mr. Groff treated them like

employees, and they assert statutory claims seeking relief based upon that employment status,

including reinstatement of employment, back pay and benefits, front pay and benefits, and other

employment related damages.  Hartley Dec. Ex. F ¶ 28, Wherefore Clause at p. 13; Ex. G ¶ 30,

Wherefore Clause.  Under the Sentinel Policies, claims for "bodily injury" are excluded from

coverage where the injury is "to an 'employee' of the insured arising out of and in the course of:

(a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's

business . . . ."  Hartley Dec. Exs. A–E at Form SS 00 08 04 05 at page 4 of 24.

New Jersey courts interpret "arising out of" expansively. *See The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.,* 2015 WL 7760179, at *6 n. 8 (D.N.J. Dec. 2, 2015) (quoting *American Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998).

In *American Motorists Ins. Co. v. L–C–A Sales Co.*, the New Jersey Supreme Court determined that "whether specific acts of harassment or discrimination took place outside the workplace… is of no consequence because such conduct nevertheless would have arisen out of the employment relationship between [defendant and victim]". *American Motorists Ins. Co. v. L-C-A Sales Co.,* 155 N.J. 29, 42, 713 A.2d 1007, 1013 (1998); *see also Scottsdale Ins. Co. v. Scholl-Fassnacht,* 2000 WL 875693, at *2 (E.D. Pa. June 26, 2000), *aff'd sub nom. Scottsdale Ins. Co. v. Fassnacht*, 261 F.3d 493 (3d Cir. 2001) (even where employee was off duty and not actually working at the time, claims were held to be within employment and noting that "[t]here is binding precedent holding that employee exclusions . . . unambiguously eliminate coverage when there is a causal connection between the claimant's employment and the injury").

Thus, even if the complaints in the Underlying Actions had sought damages for bodily injury (which they did not), the underlying plaintiffs' claims for harassment and wrongful discharge are considered "arising out of" employment regardless of the fact that they occurred on a business trip to try and encourage other shooting victims to become clients of the Benedetto Firm and are precluded from coverage. *American Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41, 713 A.2d 1007, 1013 (1998) (wrongful discharge claim barred from coverage because of "arising out of and in the course of employment").

**B.    THE POLICIES EXCLUDE COVERAGE FOR "PERSONAL AND ADVERTISING INJURY" FOR "EMPLOYMENT-RELATED PRACTICES"**

The Sentinel Policies also contain an exclusion that expressly bars coverage for "personal and advertising injury" that arise out of "employment-related practices."  Thus, even if the

plaintiffs in the Underlying Actions had claimed damages for "personal and advertising injury"

(which they have not), there would be no coverage for such damages in any event because such

claims would fall within the "employment-related practices" exclusion."

The Sentinel Policies provide:

**B.     EXCLUSIONS**

**1.    Applicable To Business Liability Coverage**

This insurance does not apply to:

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 3 of 24.

***

> **r. Employment-Related Practices**
> "Personal and advertising injury" to:
> (1) A person arising out of any "employment-related practices";

***

>     This exclusion applies:
>         (a)  Whether the injury-causing event described in the definition of
>              "employment-related practices" occurs before employment,
>              during employment or after employment of that person;
>         (b)  Whether the insured may be liable as an employer or in any
>              other capacity; and
>         (c)  To any obligation to share damages with or replay someone
>              else who must pay damages because of the injury.

*Id*. at Form SS 00 60 09 15 at pages 1-2 of 2.[7]

Here, in the Underlying Actions, plaintiffs allege that they were treated as "employees,"

and they seek employment-related damages.  Hartley Dec. Ex. F ¶ 28; Ex. G ¶ 30.  Moreover, all

of the acts complained of in the Underlying Complaints involve conduct and offenses arising out

of the employment context, in which it is alleged that Defendants engaged in and/or permitted

---

[7] This Business Liability Coverage Form Amendatory Endorsement modifies the employment-related practices exclusion contained in the Business Coverage Liability Form.  *See* Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 9 of 24.

23

workplace sexual harassment, discrimination, retaliation/improper reprisal, negligent hiring, negligent retention, negligent training, and negligent supervision.  Coverage for any "personal and advertising injury" related to such claims and causes of action is clearly precluded by the plain and unambiguous language of the employment-related practices exclusion.  *See System Design Concepts, Inc. v. CA Ins. Co.,* 2006 WL 2191963, at *5 (N.J. App. Div. Aug. 4, 2006) (affirming summary judgement to insurer based on exclusion for "employment related practices" where allegations of complaint clearly focused on insured's employment practices).  Thus, even if the Court should find that plaintiffs in the Underlying Actions allege personal and advertising injury as defined by the Sentinel Policies, there is no coverage for such claims. [8]

### C.   MR. GROFF'S ALLEGED ACTIONS FALL WITHIN THE EXCLUSION FOR "EXPECTED OR INTENDED INJURY"

The Sentinel Policies expressly exclude coverage for any "bodily injury" that is "expected or intended from the standpoint of the insured."  Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 4 of 24.  Thus, even assuming the underlying complaints sought damages for bodily injury (which they do not), it would be of little moment.  Whether the Court finds that Mr. Groff's intentional actions and conduct caused objectively probable injury and thus do constitute a covered occurrence, *see* Section III, *infra,* or caused expected or intended injury and are therefore barred by this exclusion, the result is the same – if the actions are intentional and likely to cause a particular injury alleged, there simply is no coverage.

---

[8] It should also be noted that under the Sentinel Policies, coverage exists for named designees in the Declarations, as well as for "'employees' . . . but only for acts within the scope of their employment . . . or while performing duties related to the conduct of . . . business."  Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 10 of 24.  Employees are not insureds for "bodily injury" or "personal and advertising injury" "[t]o . . . a co-'employee' while in the course of his or her employment or performing duties related to the conduct of [the designee's] business, or to . . . other 'volunteer workers' while performing duties related to the conduct of [designee's] business."  *Id.*

When the court in *Mroz* determined that there was no accidental occurrence or tort of negligence based upon the numerous instances of harassment, it then considered the exclusion for intentionality, noting that "if the allegations are true, [they] could only have been intentional both in purpose and result." *Mroz v. Smith,* 261 N.J. Super. 133, 138, 617 A.2d 1259, 1262 (App. Div. 1992).  That objective analysis focused on the likelihood that an injury will result from an actor's behavior, rather than on the wrongdoer's subjective state of mind, which is presumed by the act or behavior. *Callo v. Allstate Ins. Co.,* 2010 WL 4923031 (N.J. Super. Ct. App. Div. Dec. 6, 2010).  The *Callo* court discussed the rationale behind this approach:

> Public policy denies insurance indemnification for the civil consequences of intentional wrongdoing. While it may not be necessary that an actor intend the very consequences that occur for the public policy against indemnity to apply and relieve an insurer of its contractual obligation to indemnify an insured, if the actor knows that injuries are certain or substantially certain to follow from his or her act and still goes ahead, it is the same in law as if he or she had, in fact, intended the end result. Where a coverage exclusion is expressed in terms of *bodily injury expected or intended by the insured*, factual inquiry into the actual intent of the actor to cause that injury is necessary *only if the intentional act does not have the inherent probability of causing the degree of injury actually inflicted.*

*Callo* 2010 WL 4923031, at *4 (emphasis added) (internal citations omitted).  Hence, objective intent may be presumed when the intentional act has "the inherent probability of causing the degree of injury actually inflicted."  *Id.*

Although "foolhardy or reckless acts are not automatically excluded from coverage," "particularly reprehensible (for example, sexual abuse of children in a day care center)" acts are excluded, because "subjective intent can be presumed from the likelihood that injury will result from that reprehensible conduct." *Cumberland Mut. Fire Ins. Co. v. Murphy,* 183 N.J. 344, 349, 873 A.2d 534, 537 (2005) (quoting *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 184, 607 A.2d 1255, 1265 (1992).

Here, Mr. Groff's alleged actions and conduct, on their face, demonstrate that they were intentional and had the inherent probability of causing the injury alleged.  Further, Mr. Groff's numerous instances of alleged harassment, reprisals and retaliation, if true, appear "particularly reprehensible" (*Mroz*), and thus neither an "accidental" occurrence nor unintended or unexpected, but rather intentional "both in purpose and result."  The court need not look to Mr. Groff's subjective intent, because intent to injure may be inferred as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Sentinel respectfully requests the Court grant Sentinel's summary judgment motion, together with such further relief as this Court deems proper.

Dated:  White Plains, New York
       August 7, 2020

                       MENZ BONNER KOMAR & KOENIGSBERG LLP


                       By:     */s/ Patrick D. Bonner*
                               Patrick D. Bonner, Jr.
                               (pbonner@mbkklaw.com)

                       One North Lexington Avenue, Suite 1550
                       White Plains, New York 10601
                       Tel.: (914) 949-0222

                       *Attorneys for Plaintiff Sentinel Insurance Company, Ltd.*