Patrick D. Bonner Jr.
**MENZ BONNER KOMAR & KOENIGSBERG LLP**
One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.: (914) 949-0222/ Fax: (914) 997-4117
*Attorneys for Plaintiff Sentinel Insurance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., | Civil Action No. 19-cv-20142-RMB-AMD |
| Plaintiff, | |
| -vs- | |
| CONRAD J. BENEDETTO, individually and doing business as THE LAW OFFICES OF CONRAD J. BENEDETTO, and JOHN GROFF, | [Document Electronically Filed] |
| Defendants. | |
| CONRAD J. BENEDETTO, THE LAW OFFICES OF CONRAD J. BENEDETTO, and JOHN GROFF, | |
| Plaintiffs, | |
| -vs- | |
| SENTINEL INSURANCE COMPANY, LTD., JOHN DOES and ABC ENTITIES A-Z, | |
| Defendants. | |

**PLAINTIFF SENTINEL INSURANCE COMPANY'S STATEMENT OF
MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(a) IN
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel" or "Plaintiff") hereby submits this statement pursuant to Local Rule 56.1(a) of the Local Rules of the United States District Court for the District of New Jersey, to set forth the material facts as to which it contends there are no genuine issue to be tried:

## A.   THE PARTIES TO THIS COVERAGE ACTION

1.    Plaintiff Sentinel Insurance Company, Ltd. is a foreign corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.  (Bonner Dec. Ex. A ¶ 3).

2.    Conrad J. Benedetto is an individual and attorney at law admitted to practice in the State of New Jersey who is doing business as and/or is the sole owner and principal of the Benedetto Firm, and is a citizen of the State of Pennsylvania.  (Bonner Dec. Ex. G ¶¶ 4, 5).

3.    The Law Offices of Conrad J. Benedetto is a law firm with locations in New Jersey and Pennsylvania.  (Bonner Dec. Ex. Ex. G ¶ 5).

4.    Mr. Groff is an individual formerly employed as the office manager of the Benedetto Firm and a citizen of New Jersey.  (Bonner Dec. Ex. Ex. A ¶ 6; Ex. G ¶ 6).

## B.   THE UNDERLYING ACTIONS

5.    This coverage action relates to two underlying lawsuits filed in the Superior Court of the State of New Jersey captioned *Brian Nunez v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.) ("Nunez Action"), and *John Doe v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-004588-18 (N.J. Super. Ct., Camden Co.) ("Nava Action").[1]  (Hartley Dec. Exs. F and G; Bonner

---

[1] The Underlying Action by Javier Nava was originally filed anonymously by him as "John Doe" and is now captioned *Javier Nava v. The Law Offices of Conrad J. Benedetto, et al.*

Dec. Ex. A ¶ 1; Bonner Dec. Ex. C ¶ 1).

6.      Defendants herein are named as defendants in the Underlying Actions. (Hartley Dec. Exs. F and G).

7.      Both the Nunez Action and the Nava Action seek to recover damages and other relief for sexual harassment and discrimination due to gender under the New Jersey Law Against Discrimination ("NJLAD"), retaliation/improper reprisal under NJLAD, violations of the New Jersey Consumer Fraud Act, negligent hiring, negligent retention, negligent training, negligent supervision, negligence, and gross negligence.  (Hartley Dec. Exs. F and G).

8.      Both the Nunez Action and the Nava Action seek reinstatement of employment and benefits, back pay and benefits, front pay and benefits, reinstatement, equitable relief, as well as compensatory and punitive damages, lost wages, and attorneys' fees and costs. (Hartley Dec. Exs. F and G Counts Two and Three at Wherefore Clauses).

9.      While the Complaints in both the Nunez Action and the Nava Action allege and seek damages for emotional distress, neither alleges or seeks damages for any bodily injuries or physical manifestations of symptoms.  (Hartley Dec. Exs. F and G).

THE NUNEZ ACTION

10.      The Nunez Action alleges that defendant John Groff ("Groff") solicited plaintiff Nunez to be a client of the Benedetto Firm and Benedetto following the June 12, 2016 Pulse Nightclub shooting in Florida.  (Hartley Dec. Ex. F, ¶¶ 13-16).

11.      The Nunez Action alleges that plaintiff Nunez retained the Benedetto Firm and Benedetto to represent his interests in connection with damages stemming from the Pule Nightclub shooting.  (*Id*. ¶ 17).

12.      The Nunez Action alleges that soon after plaintiff Nunez retained the

Benedetto Firm and Benedetto, Groff began texting Nunez for purposes unrelated to his case and to groom Nunez for Groff's sexual harassment.  (*Id*. ¶ 20).

13.     The Nunez Action alleges that following the October 1, 2017 Route 91 Harvest Music Festival showing in Las Vegas, Nevada, Defendants used Nunez to recruit victims of the Las Vegas shooting, including convincing Nunez to travel to Nevada and California to speak to other shooting survivors to convince them to retain the Benedetto Firm and Benedetto.  (*Id*. ¶¶ 22-24).

14.     The Nunez Action alleges that Groff represented to Nunez that Groff, the Benedetto Firm and Benedetto would pay for lodging, transportation and food expenses.  (*Id*. ¶ 25).

15.     The Nunez Action alleges that Groff treated Nunez like and employee, including pressuring Nunez to record a promotional video.  (*Id*. ¶¶ 28, 29).

16.     The Nunez Action alleges that Groff began flirting with and sexually harassing Nunez and when Nunez rebuked the advances, Groff threatened to withhold money for lodging, transportation and food. (*Id*. ¶¶ 32, 33).

17.     The Nunez Action alleges that Groff repeatedly demanded sexual favors and retaliated when Nunez rejected him.  (*Id*. ¶ 41).

18.     The Nunez Action alleges that Groff sent Nunez sexually explicit texts to entice him into a sexual relationship and frequently discussed getting Nunez drunk so he could force himself sexually upon Nunez.  (*Id*. ¶¶ 42-46).

19.     The Nunez Action alleges that Groff had a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Benedetto and the Benedetto Firm were aware, including a prior lawsuit alleging such.  (*Id*. ¶¶ 50-59; Ex.

A).

**THE NAVA ACTION**

20.     The Nava Action seeks to recover to recover damages and other relief for sexual harassment and discrimination under NJLAD, sexual harassment and discrimination due to sexual orientation, retaliation/improper reprisal under NJLAD, violations of the New Jersey Consumer Fraud Act, negligent hiring, negligent retention, negligent training, negligent supervision, negligence, and gross negligence.  (Hartley Dec. Ex. G).

21.     The Nava Action also seeks to recover compensatory and punitive damages, lost wages, and attorneys' fees and costs.  (*Id*. ¶ 12).

22.     The Nava Action alleges that Groff solicited plaintiff Doe to be a client of the Benedetto Firm and Benedetto following the June 12, 2016 Pulse Nightclub shooting in Florida.  (*Id*. ¶¶ 14-17).

23.     The Nava Action alleges that plaintiff retained the Benedetto Firm and Benedetto to represent his interests in connection with damages stemming from the Pule Nightclub shooting.  (*Id*. ¶ 18).

24.     The Nava Action alleges that soon after the plaintiff in the Nava Action retained the Benedetto Firm and Benedetto, Groff began texting Nunez for purposes unrelated to his case and to groom Nunez for Groff's sexual harassment.  (*Id*. ¶ 22).

25.     The Nava Action alleges that following the October 1, 2017 Route 91 Harvest Music Festival shooting in Las Vegas, Nevada, Defendants used plaintiff in the Nava Action to recruit victims of the Las Vegas shooting, including convincing plaintiff to travel to Nevada and California to speak to other shooting survivors to convince them to retain the Benedetto Firm and Benedetto.  (*Id*. ¶¶ 24-26).

26.     The Nava Action alleges that Groff represented to the plaintiff in the Nava Action that Groff, the Benedetto Firm and Benedetto would pay for lodging, transportation and food expenses.  (*Id*. ¶ 27).

27.     The Nava Action alleges that Groff treated plaintiff in the Nava Action like and employee, including pressuring plaintiff to record a promotional video.  (*Id*. ¶¶ 30, 31).

28.     The Nava Action alleges that Groff began flirting with and sexually harassing the plaintiff in the Nava Action and when plaintiff rebuked the advances, Groff threatened to withhold money for lodging, transportation and food.  (*Id*. ¶¶ 33, 34).

29.     The Nava Action alleges that Groff repeatedly demanded sexual favors and retaliated when the plaintiff in the Nava Action rejected him.  (*Id*. ¶ 37).

30.     The Nava Action alleges that Groff sent the plaintiff in the Nava Action sexually explicit texts to entice him into a sexual relationship and frequently discussed getting plaintiff drunk so he could force himself sexually upon plaintiff  (*Id*. ¶¶ 44-70).

31.     The Nava Action alleges that Groff had a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Benedetto and the Benedetto Firm were aware, including a prior lawsuit alleging such.  (*Id*. ¶¶ 72-73; Ex. A).

## C.     THE POLICIES

32.     Sentinel issued primary general liability policy 38 SBA BX9035 to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2015 to October 12, 2016.  (Hartley Dec. Ex. A).

33.     Sentinel issued primary general liability policy 38 SBA BX9035 to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2016

to October 12, 2017.  (*Id*. Ex. B).

34.     Sentinel issued Sentinel's primary general liability policy 38 SBA BX9035 to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2017 to October 12, 2018.  (*Id*. Ex. C).

35.     Sentinel issued primary general liability policy 38 SBA BX9035  to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2018 to October 12, 2019.  (*Id*. Ex. D).

36.     Sentinel issued primary general liability policy 38 SBA BX9035 to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2019 to October 12, 2020.[2]  (*Id*. Ex. E).

37.     The declaration pages in the Sentinel Policies provide the "Description of Business" as "Lawyers & Law Firms." (Hartley Dec. Ex. A-E at Form SS 00 02 12 06).

38.     The Sentinel Policies contain the following relevant policy provisions applicable to the business liability coverage part:

**BUSINESS LIABILITY COVERAGE FORM**

**\*\*\***

**A.     COVERAGES**
**1.     BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**
   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit"

---

[2] The policies issued to Conrad Benedetto dba The Law Offices of Conrad J. Benedetto for the period October 12, 2015 to October 12, 2020 (are collectively referred to as the "Sentinel Policies."

seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

\*\*\*

b.  This insurance applies:
  (1) To "bodily injury" and "property damage" only if:
    (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
    (b) The "bodily injury" or "property damage" occurs during the policy period; and
    (c) Prior to the policy period, no insured listed under Paragraph 1. of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
  (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

c.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section C. – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
  (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
  (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

(Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 1-2 of 24).

39.     The Sentinel Policies also contain the following relevant policy provisions applicable to the business liability coverage part:

8

### C.      WHO IS AN INSURED

1.      If you are designated in the Declarations as:
   a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
      . . .
2.      Each of the following is also an insured:
   **a.  Employees And Volunteer Workers**
   Your . . . "employees" . . . , but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business…
   However, none of these "employees" . . . are insureds for:
   (1) "Bodily injury" or "personal and advertising injury":
      (a) To . . . a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 10 of 24).

40.     The Business Liability Coverage Form includes the following definitions:

### G.      LIABILITY AND MEDICAL EXPENSES DEFINITIONS

***

5. "Bodily injury" means physical:
   a.  Injury;
   b.  Sickness; or
   c.  Disease
   sustained by a person and, if arising out of the above, mental anguish or death at any time.

***

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

***

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

***

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral, written or electronic publication of material that violates a person's right of privacy;

    f.  Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

    g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement";

    h.  Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.[3]

*** 

20. "Property damage" means:

    h.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    i.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

*** 

---

[3] Section 17.h of this definition is deleted pursuant to the amendatory endorsement noted below. *See* Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at page 2 of 2.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Volunteer worker" means a person who:
    a. Is not your "employee";
    b. Donates his or her work;
    c. Acts at the direction of and within the scope of duties determined by you; and
    d. Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 20-23 of 24).

41.      Section 17.h. of the Business Liability Coverage Form, shown above, is modified by Business Liability Coverage Form Amendatory Endorsement, as follows:

**BUSINESS LIABILITY COVERAGE FORM**
**AMENDATORY ENDORSEMENT**

\*\*\*

F. Subparagraph 17.h. of Section G, **Liability and Medical Expenses Definitions** [is] deleted.

(Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at page 2 of 2).

42.      The Business Liability Coverage Form also contains the following exclusions applicable to the claims at issue:

**B.**     **EXCLUSIONS**

1.    Applicable To Business Liability Coverage

This insurance does not apply to:

a. Expected Or Intended Injury

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

***

e. Employer's Liability

    "Bodily injury" to:

    (1) An "employee" of the insured arising out of and in the course of:

        (a)  Employment by the insured; or

        (b)  Performing duties related to the conduct of the insured's business . . . .

***

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of that injury.

***

r. Employment-Related Practices[4]

    "Bodily injury" or "personal and advertising injury" to:

    (1) A person arising out of any:

        (a)  Refusal to employ that person;

        (b)  Termination of that person's employment; or

        (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

***

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of that injury.

(Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 9 of 24).

    43.    The Business Liability Coverage Form Amendatory Endorsement modifies the foregoing exclusion as follows:

    B. Subparagraph 1.r. of Section B. Exclusions is deleted and replaced with the following:

---

    [4] This subparagraph was replaced, as noted below.

12

**r. Employment-Related Practices**
"Personal and advertising injury" to:
(1) A person arising out of any "employment-related practices";

\*\*\*

This exclusion applies:
  (a) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;
  (b) Whether the insured may be liable as an employer or in any other capacity; and
  (c) To any obligation to share damages with or replay someone else who must pay damages because of the injury.

(Hartley Dec. Exs. A-E at Form SS 00 60 09 15 at pages 1-2 of 2).

**D.    PROCEDURAL HISTORY**

44.    On November 13, 2019, Sentinel commenced this action by filing its Complaint seeking a declaratory judgment that Sentinel has no duty to defend or indemnify Defendants in connection with the Underlying Actions.  (Bonner Dec. Ex. A).

45.    Sentinel's action was assigned civil action no. 19-cv-20142.  (*Id.*).

46.    Defendants agreed to waive service of process and Attorney Anthony Scordo on behalf of the Optimum Law Group, P.C. executed Waivers of Summons on behalf of all Defendants.  (Bonner Dec. Ex. B).

47.    On December 14, 2019, Defendants filed an action against Sentinel in the Superior Court of the State of New Jersey, Law Division, Burlington County.  (Bonner Dec. Ex. C).

48.    Defendants' complaint seeks a declaration that Sentinel has a duty to defend and indemnify Defendants in connection with the Underlying Actions and also included causes of action seeking damages for breach of contract and bad faith.  (*Id.*).

49.    On January 15, 2020, Sentinel removed Defendants' action to this Court

and it was assigned civil action no. 20-cv-483.  (Bonner Dec. Ex. D).

      50.    On January 22, 2020, Sentinel filed its Answer and Separate Defenses to Defendants' action.  (Bonner Dec. Ex. E).

      51.    The parties subsequently appeared at in initial conference on February 18, 2020, and Sentinel's unopposed oral application to consolidate the cases was granted and the cases were consolidated for all purposes under civil action no. 19-cv-20142.  (Bonner Dec. Ex. F).

      52.    On June 23, 2020, defendants Conrad J. Benedetto, The Law Offices of Conrad J. Benedetto filed an Answer.  (Bonner Dec. Ex. G).

      53.    On June 5, 2020, Mr. Groff filed a motion to dismiss that was administratively terminated for Mr. Groff's failure to submit a pre-motion letter.  (ECF Nos. 25, 26, 28).

      54.    Subsequently the parties submitted pre-motion letters  and a Zoom video conference was scheduled for July 8, 2020. (ECF Nos. 29, 31, 32, 33).

      55.    Counsel for Mr. Groff failed to appear at that conference and the Court issued a text order requiring all pleadings and dispositive motions to be filed within 30 days. (ECF No. 36).

Dated:  White Plains, New York
       August 7, 2020

             MENZ BONNER KOMAR & KOENIGSBERG LLP

             By:    */s/ Patrick D. Bonner*
                     Patrick D. Bonner, Jr.
                     (pbonner@mbkklaw.com)

             One North Lexington Avenue, Suite 1550
             White Plains, New York 10601
             Tel.: (914) 949-0222

             *Attorneys for Plaintiff Sentinel Insurance Company, Ltd.*