UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., | Civil Action No. 19-cv-20142-RMB-AMD |
| Plaintiff, | |
| -vs- | Motion Return Date: September 8, 2020 |
| CONRAD J. BENEDETTO, individually and doing business as THE LAW OFFICES OF CONRAD J. BENEDETTO, and JOHN GROFF, | [Document Electronically Filed] |
| Defendants. | |
| CONRAD J. BENEDETTO, THE LAW OFFICES OF CONRAD J. BENEDETTO, and JOHN GROFF, | |
| Plaintiffs, | |
| -vs- | |
| SENTINEL INSURANCE COMPANY, LTD., JOHN DOES and ABC ENTITIES A-Z, | |
| Defendants. | |

**PLAINTIFF SENTINEL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF CONRAD J. BENEDETTO AND THE LAW OFFICES OF CONRAD J. BENEDETTO**

Patrick D. Bonner Jr.
**MENZ BONNER KOMAR & KOENIGSBERG LLP**
One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.: (914) 949-0222/ Fax: (914) 997-4117
*Attorneys for Plaintiff Sentinel Insurance Company*

## **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 4

     A.   THE PARTIES TO THIS COVERAGE ACTION ...................................... 4

     B.   THE UNDERLYING ACTIONS ............................................................ 4

     C.   THE INSURANCE POLICIES ............................................................. 6

     D.   PROCEDURAL HISTORY ................................................................... 9

ARGUMENT ................................................................................................ 11

I.     DEFENDANTS' MOTION SHOULD BE
     DENIED AS PROCEDURALLY DEFECTIVE .......................................... 11

II.    SENTINEL DOES NOT HAVE A DUTY TO DEFEND MR. BENEDETTO OR THE
     BENEDETTO FIRM IN CONNECTION WITH THE UNDERLYING ACTIONS ........ 12

     A.   STANDARD OF REVIEW ................................................................. 12

     B.   THE SENTINEL POLICIES DO NOT PROVIDE COVERAGE FOR THE UNDERLYING
         ACTIONS BECAUSE THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGED FOR
         "BODILY INJURY" ........................................................................ 14

     C.   VARIOUS CLAIMS IN THE UNDERLYING ACTIONS FALL WITHIN THE
         CLEAR AND UNAMBIGUOUS EMPLOYER'S LIABILITY EXCLUSION ......... 18

CONCLUSION .............................................................................................. 20

**TABLE OF AUTHORITIES**

CASES

*Abouzaid v. Mansard Gardens Assocs., LLC,*
207 N.J. 67, 23 A.3d 338 (2011).................................................................................12

*American Motorists Ins. Co. v. L-C-A Sales Co.,*
155 N.J. 29, 713 A.2d 1007 (1998)........................................................................13, 18

*American Plaza, LLC v. Marbo Cross Shop, LLC,*
No. 08–5963, 2010 WL 455349 (D.N.J. Feb. 3, 2010) ................................................12

*Baker v. Hartford Life Ins. Co.,*
No. 08–6382, 2010 WL 2179150 (D.N.J. May 28, 2010) ............................................12

*Cabán Hernández v. Philip Morris USA, Inc.,*
486 F.3d 1 (1st Cir. 2007)............................................................................................12

*City of Atlantic City v. Zemurray St. Capital, LLC,*
2017 WL 1540386 (D.N.J. Apr. 25, 2017) .............................................................11, 12

*Cole v. Laughey Funeral Home,*
376 N.J. Super. 135, 869 A.2d 457 (App. Div. 2005) ..........................................17 n. 6

*Collick v. Weeks Marine, Inc.,*
2013 WL 6070035 (D.N.J. Nov. 18, 2013) ..................................................................12

*Danek v. Hommer,*
28 N.J. Super. 68 (App. Div. 1953), *aff'd o.b.,* 15 N.J. 573 (1954)...............................12

*Doto v. Russo,*
140 N.J. 544 (1995) .....................................................................................................13

*Flomerfelt v. Cardiello,*
202 N.J. 432, 997 A.2d 991 (2010).............................................................................13

*Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.,*
98 N.J. 18 (1970) .........................................................................................................13

*Longobardi v. Chubb Ins. Co. of New Jersey,*
121 N.J. 530, 582 A.2d 1257 (1990)...........................................................................13

*McCann v. Unum Provident,*
921 F. Supp. 2d 353 (D.N.J. 2013) .............................................................................12

*New Jersey Auto. Ins. Plan v. Sciarra,*
103 F. Supp. 2d 388 (D.N.J. 1998) ........................................................................12

*New Jersey Mfg. Ins. Co. v. Vizcaino,*
392 N.J. Super. 366, 920 A.2d 754 (App. Div. 2007) ......................................17 n. 5

*Princeton Ins. Co. v. Chunmuang,*
151 N.J. 80 (1997) ..................................................................................................13

*Scottsdale Ins. Co. v. Scholl-Fassnacht,*
2000 WL 875693 (E.D. Pa. June 26, 2000) .......................................................18, 19

*Scottsdale Ins. Co. v. Fassnacht,*
261 F.3d 493 (3d Cir. 2001).................................................................................18, 19

*SL Indus., Inc. v. American Motorists Ins. Co.,*
128 N.J. 188, 607 A.2d 1266 (1992)...............................................................16, 17 n. 5

*The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.,*
2015 WL 7760179 (D.N.J. Dec. 2, 2015) ..............................................................18

*Thomas v. County of Camden,*
386 N.J. Super. 582, 902 A.2d 327 (App. Div. 2006) .............................................18

*U.S. Liab. Ins. Grp. v. Sec. Ins. Co. of Hartford,*
381 N.J. Super. 211, 885 A.2d 477 (App. Div. 2005) ............................................16

*Voorhees v. Preferred Mut. Ins. Co.,*
128 N.J. 165, 607 A.2d 1255 (1992)............................................................... *passim*


S<small>TATUTES AND</small> O<small>THER</small> A<small>UTHORITIES</small>

Fed. R. Civ. P. 56 (c)(1).......................................................................................2, 11

Local Civil Rule 56.1...........................................................................................1, 11

Local Civil Rule 56.1(a) .........................................................................................12

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel" or "Plaintiff") respectfully submits this Memorandum of Law, together with its response to Conrad J. Benedetto's ("Mr. Benedetto") and The Law Offices of Conrad J. Benedetto's ("Benedetto Firm") (collectively, "Defendants") Statement of Uncontested Facts, Counterstatement of Material Facts, the Declaration of Laianna C. Hartley ("Hartley Dec.") and the Declaration of Patrick D. Bonner, Jr. ("Bonner Dec."), in opposition to Defendants' motion for partial summary judgment.

## PRELIMINARY STATEMENT

This consolidated insurance coverage action arises out of the mass shooting that occurred at the Pulse Nightclub in Orlando, Florida in June 2016. Following the tragedy, John Groff, the Benedetto Firm's office manager, sought out individuals who were present at the shooting to retain them as clients of the Benedetto Firm. After retaining the Benedetto Firm, these new clients accompanied Mr. Groff on a tour to visit and recruit other mass shooting survivors, including victims of the October 2017 Mandalay Bay hotel massacre in Las Vegas. Mr. Groff allegedly began to make unwanted sexual advances and threats toward the clients, and those individuals subsequently brought employment-related lawsuits against Mr. Benedetto, the Benedetto Firm, and Mr. Groff, captioned *Brian Nunez v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.), and *John Doe v. The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-004588-18 (N.J. Super. Ct., Camden Co.) (the "Underlying Actions"). Defendants now seek partial summary judgment and a declaration that Sentinel has a duty to defend Mr. Benedetto and the Benedetto Firm in connection with the Underlying Actions.

As a preliminary matter, Defendants' motion should be denied because the motion is procedurally defective. Local Rule 56.1 requires a movant seeking summary judgment to set

forth material facts in separately numbered paragraphs with citation to affidavits and other documents submitted in support of the motion.  In addition, Fed. R. Civ. P. 56 requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citation to particular parts of materials in the record…."  Fed. R. Civ. P. 56 (c)(1).  Here, Defendants have submitted a Statement of Uncontested Facts, but have not submitted any affidavits or documents in support of their motion or citations to any record evidence purportedly supporting the assertions contained therein.  While Defendants' Statement of Uncontested Facts makes reference to the complaints in the Underlying Actions, Defendants did not submit the same and have also failed to submit copies of the Sentinel policies under which they assert that Sentinel owes them a duty of defense.  This omission is fatal to Defendants' motion, as the duty to defend is determined by comparing the allegations contained in the underlying complaints in the Underlying Actions to the terms of the policies.

Substantively, Defendants' motion should be denied because the Underlying Actions do not seek damages for bodily injury, property damage, or personal and advertising injury and assert various claims that do not constitute an "occurrence" and/or otherwise fall within employment liability exclusion to the Sentinel Policies.  Defendants do not dispute that the two underlying employment-related discrimination lawsuits for which they seek coverage do not allege damages for property damage or personal and advertising injury.  Rather, Defendants argue that the complaints in the Underlying Actions include various claims for negligence allegedly resulting in "emotional or psychological harm" that give rise to a duty to defend.  Moving Mem. at 4.  Defendants principally rely on the New Jersey Supreme Court's decision in *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255 (1992) for the proposition that a duty to defend arises when an underlying complaint alleges emotional distress that potentially

may result in physical manifestations of symptoms which would fall within the scope of coverage for "bodily injury" claims.

But what Defendants ignore is that in the *Voorhees* case, the underlying plaintiff *actually* suffered physical manifestations of her injuries, including nausea and headaches. Here, there are no allegations or claims of physical symptoms resulting from emotional distress and no damages are sought for the same. Equally important, the *Voorhees* court interpreted an entirely different definition of "bodily injury," which it found ambiguous in the particular context before it, because the policy at issue merely provided that it encompassed "bodily harm, sickness or disease to a person." Similarly, the insuring agreement of the homeowner's policy at issue in *Voorhees* was completely different from the one here, and included an obligation to defend any suit that "results from" bodily injury,

Here, the Sentinel Policies expressly require **physical** injury, **physical** sickness or **physical** disease in order to constitute "bodily injury" falling within the scope of coverage. They further provide that coverage will extend to "mental anguish" only if it arises out of the physical injury itself. If the mental anguish arises out of something other than physical injury/sickness/ disease (like here, where it is alleged to have arisen out of sexual harassment), it is not covered under the plain language of the policies. Tellingly, the underlying complaints do not allege and seek damages for any "physical injury," which is required to fall within the Insuring Agreement of the Sentinel Policies. Lastly, the claims in the underlying complaints arise out of the alleged employment context and/or involve intentional conduct by Defendants. Underlying plaintiffs allege that they were treated like employees and discriminated against, entitling them to various statutory and other damages including back pay, future pay and benefits. Because the Sentinel Policies exclude coverage for employer's liability and only cover an "occurrence," there is

simply no coverage for such claims, even if the underlying complaints were otherwise construed

to sufficiently allege damages because of "bodily injury" for purposes of the contractual duty to

defend  -- which they do not.

For these reasons, this Court should deny Defendants' motion for partial summary

judgment.

## STATEMENT OF FACTS

**A.**     **THE PARTIES TO THIS COVERAGE ACTION**

Plaintiff Sentinel Insurance Company, Ltd. is a foreign corporation organized under the

laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

Bonner Dec. Ex. A ¶ 3.  Mr. Benedetto is an individual and attorney at law admitted to practice

in the State of New Jersey who is doing business as and/or is the sole owner and principal of the

Benedetto Firm, and is a citizen of the State of Pennsylvania.  *Id*. Ex. G ¶¶ 4, 5.  The Benedetto

Firm is a law firm with locations in New Jersey and Pennsylvania.  *Id*. Ex. G ¶ 5.  At all relevant

times, Mr. Groff was employed as the office manager of the Benedetto Firm and a citizen of

New Jersey.  *Id*. Ex. A ¶ 6.

**B.**     **THE UNDERLYING ACTIONS**

This coverage action relates to two underlying lawsuits filed in the Superior Court of the

State of New Jersey captioned *Brian Nunez v. The Law Offices of Conrad J. Benedetto, et al.,*

Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.) ("Nunez Action"), and *John Doe v.*

*The Law Offices of Conrad J. Benedetto, et al.,* Case No. CAM-L-004588-18 (N.J. Super. Ct.,

Camden Co.) ("Nava Action").[1]  Hartley Dec. Exs. F and G.

Both the Nunez Action and the Nava Action seek to recover damages and other relief for

---

[1] The Underlying Action by Javier Nava was originally filed anonymously by him as
"John Doe" and is now captioned *Javier Nava v. The Law Offices of Conrad J. Benedetto, et al.*

sexual harassment and discrimination due to gender in the employment context under the New

Jersey Law Against Discrimination ("NJLAD"), retaliation/improper reprisal under NJLAD,

violations of the New Jersey Consumer Fraud Act, negligent hiring, negligent retention,

negligent training, negligent supervision, negligence, and gross negligence.  Hartley Dec. Exs. F

and G.  The two lawsuits seek reinstatement of employment and benefits, back pay and benefits,

front pay and benefits, reinstatement, equitable relief, as well as compensatory and punitive

damages, lost wages, and attorneys' fees and costs.  Hartley Dec. Exs. F and G Counts Two and

Three at Wherefore Clauses.  While the Complaints in both the Nunez Action and the Nava

Action allege that they suffered emotional distress, neither alleges or seeks damages for any

physical injuries or physical manifestations of symptoms.  Hartley Dec. Exs. F and G.

In particular, the complaints in the Nunez and Nava Actions allege the following:

- The Nunez and Nava Actions seek "to recover damages and other relief for discrimination and retaliation."   Hartley Dec. Ex. F, ¶ 10; Ex. G, ¶ 11.

- Groff solicited them to be a client of the Benedetto Firm following the June 12, 2016 Pulse Nightclub shooting in Florida.  *Id*. Ex. F, ¶¶ 13-16; Ex. G, ¶¶ 14-17.

- Nunez and Nava retained the Benedetto Firm to represent their interests in connection with damages stemming from the Pulse Nightclub shooting.  *Id*. Ex. F ¶ 17; Ex. G. ¶ 18.

- Soon after Nunez and Nava retained the firm, Groff began texting them for purposes unrelated to their respective cases and to groom each for Groff's sexual harassment.  *Id*. Ex. F. ¶ 20; Ex. G. ¶ 22.

- Following the October 1, 2017 Route 91 Harvest Music Festival showing in Las Vegas, Defendants used Nunez and Nava to recruit victims of the Las Vegas shooting, including convincing Nunez and Nava to travel to Nevada and California to speak to other shooting survivors to convince them to retain the Benedetto Firm and Benedetto.  *Id*. Ex. F ¶¶ 22-24; Ex. G ¶¶ 24-26.

- Groff represented to Nunez and Nava that Groff, the Benedetto Firm and Benedetto would pay for lodging, transportation and food expenses.  *Id*. Ex. F. ¶ 25; Ex. G. ¶ 27.

- Groff treated Nunez and Nava like employees, including pressuring Nunez and Nava to record a promotional video. *Id*. Ex. F ¶¶ 28, 29; Ex. G ¶¶ 30, 31.

- Groff began flirting with and sexually harassing Nunez and Nava, and when Nunez and Nava rebuked the advances, Groff threatened to withhold money for lodging, transportation and food. *Id*. Ex. F ¶¶ 32, 33; Ex. G ¶¶ 33, 34.

- Groff repeatedly demanded sexual favors and retaliated when Nunez and Nava rejected him. *Id*. Ex. F ¶ 41; Ex. G ¶ 37.

- Groff sent Nunez and Nava sexually explicit texts to entice them into a sexual relationship and frequently discussed getting Nunez and Nava drunk so he could force himself sexually upon Nunez and Nava. *Id*. Ex. F ¶¶ 42-46; Ex. G ¶¶ 44-70.

- Groff had a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Benedetto and the Benedetto Firm were aware, including a prior lawsuit alleging nearly identical sexual harassment claims. *Id*. Ex. F ¶¶ 50-59; Ex. A; Ex. G ¶¶ 72-73; Ex. A.

## C.   THE INSURANCE POLICIES

It is undisputed that Sentinel issued the following policies to Conrad Benedetto ("Sentinel Policies"): (1) Policy 38 SBA BX9035 for the period October 12, 2015 to October 12, 2016; (2) Policy 38 SBA BX9035 for the period October 12, 2016 to October 12, 2017; (3) 38 SBA BX9035 for the period October 12, 2017 to October 12, 2018; (4) 38 SBA BX9035 for the period October 12, 2018 to October 12, 2019; and (5) 38 SBA BX9035 for the period October 12, 2019 to October 12, 2020.[2] *See* Hartley Dec. Exs. A-E.

The Sentinel Policies identify "CONRAD BENEDETTO DBA LAW OFFICES OF CONRAD J. BENEDETTO" as a named insured on the declarations page. *Id*. at Form SS 12 35 03 12 SEQ. NO. 001. The declarations further provide the "Description of Business" as "Lawyers & Law Firms." *Id*. at Form SS 00 02 12 06.

---

[2] Defendants' Complaint also identifies the two policies for the periods October 12, 2018 to October 12, 2019 and October 12, 2019 to October 12, 2020. However, these policies are not implicated because the Underlying Actions allege activity beginning in 2016 and the Underlying Lawsuits were commenced in October 2018. Regardless, these Sentinel Policies contain the same provisions as the earlier Sentinel Policies that bar coverage. *See* Hartley Dec. Exs. F, G.

The Sentinel Policies contain the following relevant policy provisions applicable to the business liability coverage part:

### BUSINESS LIABILITY COVERAGE FORM

\*\*\*

**A.     COVERAGES**
    **1.     BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

        We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

\*\*\*

    b.  This insurance applies:
        (1) To "bodily injury" and "property damage" only if:
            (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
            (b) The "bodily injury" or "property damage" occurs during the policy period; and
            (c) Prior to the policy period, no insured listed under Paragraph 1. of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
        (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

7

    c.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section C. – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 1-2 of 24.

\*\*\*

The Business Liability Coverage Form includes the following definitions:

## G.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS

\*\*\*

5. "Bodily injury" means physical:
    a.  Injury;
    b.  Sickness; or
    c.  Disease
sustained by a person and, if arising out of the above, mental anguish or death at any time.

\*\*\*

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*\*\*

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*\*\*

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at pages 20-23 of 24.

The Business Liability Coverage Form also contains the following exclusions applicable to the claims at issue:

**B.    EXCLUSIONS**

1.    Applicable To Business Liability Coverage

This insurance does not apply to:

a. Expected Or Intended Injury

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

***

e. Employer's Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
 (a)  Employment by the insured; or
 (b)  Performing duties related to the conduct of the insured's business . . . .

***

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of that injury.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 9 of 24.

**D.    PROCEDURAL HISTORY**

On November 13, 2019, Sentinel commenced this action by filing its Complaint seeking

a declaratory judgment that Sentinel has no duty to defend or indemnify Defendants in connection with the Underlying Actions.  Bonner Dec. Ex. A.  Sentinel's action was assigned civil action no. 19-cv-20142.  Defendants agreed to waive service of process and Attorney Anthony Scordo on behalf of the Optimum Law Group, P.C. executed Waivers of Summons on behalf of all Defendants.  *Id.* Ex. B.

On December 14, 2019, Defendants filed a competing action against Sentinel in the Superior Court of the State of New Jersey, Law Division, Burlington County.  Bonner Dec. Ex. C.  Defendants' complaint seeks a declaration that Sentinel has a duty to defend and indemnify Defendants in connection with the Underlying Actions and also included causes of action seeking damages for breach of contract and bad faith.  *Id*.

On January 15, 2020, Sentinel removed Defendants' action to this Court and it was assigned civil action no. 20-cv-483.  Bonner Dec. Ex. D.  On January 22, 2020, Sentinel filed its Answer and Separate Defenses.  *Id*. Ex. E. The parties subsequently appeared at an initial conference on February 18, 2020, and Sentinel's unopposed oral application to consolidate the cases was granted and the cases were consolidated for all purposes under civil action no. 19-cv-20142.  *Id.* Ex. F.  On June 23, 2020, Mr. Benedetto and the Benedetto Firm filed an Answer.  *Id*. Ex. G.

On June 5, 2020, Mr. Groff filed a motion to dismiss (ECF No. 25) that was administratively terminated for Mr. Groff's failure to submit a pre-motion letter (ECF Nos. 26, 28).  Subsequently the parties submitted pre-motion letters  (ECF Nos. 29, 31, 32) and a Zoom video conference was scheduled for July 8, 2020 (ECF No. 33).  Counsel for Mr. Groff failed to appear at that conference and the Court issued a text order requiring all pleadings and dispositive motions to be filed within 30 days (ECF No. 36).

On August 7, 2020, Sentinel filed a motion for summary judgment seeking an Order granting summary judgment in favor of Sentinel, declaring that Sentinel has no duty to defend or indemnify Mr. Benedetto, the Benedetto Firm, and John Groff in connection with the Underlying Actions, and granting summary judgment dismissing the Complaint of Mr. Benedetto, the Benedetto Firm and John Groff against Sentinel in the consolidated action with prejudice (ECF No. 38).  Bonner Dec. Ex. H.  To date, Defendant Groff has not filed either an Answer or a dispositive motion in response to Sentinel's Complaint.

## ARGUMENT

### I.   DEFENDANTS' MOTION SHOULD BE DENIED AS PROCEDURALLY DEFECTIVE

Local Rule 56.1 requires a movant of a motion for summary judgment to set "forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."  In addition, Fed. R. Civ. P. 56 requires that a party asserting that a fact cannot be or is genuinely disputed cite to parts of materials in the record.  Fed. R. Civ. P. 56 (c)(1).

Here, Defendants have submitted a Statement of Uncontested Facts in support of their motion, but have failed to cite to or submit any affidavits or any documents in support of their motion.[3]  Given this procedural failure, this Court should exercise its discretion to deny Defendants' motion on this basis alone.  *City of Atlantic City v. Zemurray St. Capital, LLC*, 2017 WL 1540386, at *2 (D.N.J. Apr. 25, 2017) (court declined to comb record where parties failed to provide "meaningful factual statements with citations to the record in the moving papers.").  As

---

[3]  Defendants Statement includes ten (10) separately numbered paragraphs that fail to include citation to any affidavits or documents with the exception of paragraph seven (7) that references exhibits A and B which purport to be the complaints in the Underlying Actions. However, Defendants have failed to attach the complaints.

noted in *City of Atlantic City*, this Court has explained the importance of a party's failure to file a statement of undisputed facts:

> A movant's statement of facts and a nonmovant's related response serve a vital purpose, in that they assist the Court in identifying whether material facts are truly in dispute. *See Am. Plaza, LLC v. Marbo Cross Shop, LLC*, No. 08–5963, 2010 WL 455349, at *2 (D.N.J. Feb. 3, 2010). Local Civil Rule 56.1(a) thus puts the onus on the parties, rather than the Court, to find evidence of record supporting their respective arguments. *See Baker v. Hartford Life Ins. Co.*, No. 08–6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010) ("It is not the Court's responsibility to comb the record on behalf of Plaintiff's counsel."), *aff'd*, 440 Fed. Appx. 66 (3d Cir. 2011); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 408 (D.N.J. 1998) ("[I]t is the responsibility of each party to support its own contentions with a proper basis in the record of the case."). "Given the vital purpose that such rules serve, litigants ignore them at their peril." *McCann* [*v. Unum Provident*,] 921 F. Supp. 2d 353, 358 (D.N.J. 2013) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007)).

*City of Atlantic City*,  2017 WL 1540386, at *2 (D.N.J. Apr. 25, 2017) citing *Collick v. Weeks Marine, Inc.*, 2013 WL 6070035, at *2 (D.N.J. Nov. 18, 2013).

As acknowledged by Defendants, the duty to defend "depends upon a comparison between the allegations set forth in the complainant's pleading and the language of the insurance policy."  Moving Mem. at 3.  Insofar as Defendants have failed to submit either the underlying complaints or the policies under which their motion is based, Defendants' motion for partial summary judgment should be denied.

## II.    SENTINEL DOES NOT HAVE A DUTY TO DEFEND MR. BENEDETTO OR THE BENEDETTO FIRM IN CONNECTION WITH THE UNDERLYING ACTIONS

### A.    STANDARD OF REVIEW

The "determination of an insurer's duty to defend requires review of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured 'if the allegations are sustained.'"  *Abouzaid v. Mansard Gardens Assocs., LLC*, 207 N.J. 67, 79, 23 A.3d 338, 346 (2011).  As noted in *Danek v. Hommer,* 28 N.J. Super. 68, 78 (App. Div. 1953), *aff'd o.b.,* 15 N.J. 573 (1954):

> [T]he complaint should be laid alongside the policy and a
> determination made as to whether, if the allegations are
> sustained, the insurer will be required to pay the resulting
> judgment, and in reaching a conclusion, doubt must be
> resolved in favor of the insured.

Like any contract, an insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441, 997 A.2d 991, 996 (2010). When ambiguity exists, it should be "resolved in favor of the insured." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175, 607 A.2d 1255, 1260 (1992). However, "courts cannot 'write for the insured a better policy of insurance than the one purchased.'" *Memorial Properties, LLC v. Zurich Am. Ins. Co.*, 210 N.J. 512, 525, 46 A.3d 525, 532–33 (2012) (quoting *Flomerfelt*, 202 N.J.at 441). In addition, "the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537, 582 A.2d 1257, 1260 (1990).

Exclusions to coverage contained in an insurance policy are "presumptively valid and will be given effect if 'specific, plain, clear, prominent and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997), quoting *Doto v. Russo,* 140 N.J. 544 (1995). In interpreting policy exclusions, "courts must be careful not to disregard the 'clear import and intent of a policy's exclusion…" *Flomerfelt*, 202 N.J. at 442.

The burden of establishing that coverage exists rests with the party seeking coverage. *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.,* 98 N.J. 18, 26 (1970). Conversely, the burden of establishing the application of an exclusion rests with the insurer. *See, e.g., American Motorists Ins. Co. v. L-C-A Sales Co.,* 155 N.J. 29, 41 (1998).

**B.**	**THE SENTINEL POLICIES DO NOT PROVIDE COVERAGE FOR THE UNDERLYING ACTIONS BECAUSE THE UNDERLYING COMPLAINTS DO NOT SEEK DAMAGES FOR "BODILY INJURY"** [4]

Defendants take the position that plaintiffs in the Underlying Actions "assert multiple claims for negligence, all of which allegedly resulted in emotional or psychological harm." Moving Mem. at 4.  Defendants further assert that "reading the complaints in their totality, the plaintiffs have alleged Negligent Infliction of Emotional Distress."  *Id.*  Defendants therefore conclude that the New Jersey Supreme Court's decision in *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255 (1992) requires this Court to hold that a duty to defend exists not only with respect to such negligence claims, but also every cause of action and claim at issue in the Underlying Actions.  Defendants are wrong on both counts.

The *Voorhees* case involved a claim under a homeowner's policy against an insured who allegedly defamed her child's teacher.  The policy at issue provided that the insurer would defend the insured in any suit that "results from bodily injury" and defined the term "bodily injury" as simply "bodily harm, sickness or disease to a person" without any requirement for actual physical injury.  *Id.*, 128 N.J. at 171, 607 A.2d at 1258.  The teacher alleged that she suffered emotional distress and, as the *Voorhees* court further noted, "the schoolteacher's alleged emotional injuries resulted in certain physical consequences, including nausea, headaches, and the like." *Id.*, 128 N.J. at 176, 607 A.2d at 1260.  Thus, as stated by the Court, "the primary issue in this appeal [was] whether a homeowner's insurance policy providing coverage for bodily

---

[4] Defendants solely argue that the allegation in the Underlying Actions constitute bodily injury under the Sentinel Policies and accordingly, Sentinel owes Mr. Benedetto and The Benedetto Firm a duty to defend.  Defendants do not argue that the underlying actions allege "property damage" or "personal and advertising injury" under the Sentinel Policies. Notwithstanding, Sentinel incorporates by reference, as if fully set forth herein, its memorandum of law in support of its motion for summary judgment, which is attached as Exhibit H to the Declaration of Patrick D. Bonner Jr., submitted herewith.  Bonner Dec. Ex. G at 15-26.

14

injuries caused by the insured will cover liability for emotional distress accompanied by physical manifestations." *Id.,* 128 N.J. at 169, 607 A.2d at 1257.  The *Voorhees* court found in the affirmative, stating that "[b]ecause the teacher demonstrated that she was suing Voorhees for bodily injuries incurred as a result of her emotional distress, [the insurer] was obligated to defend her unless and until the physical ailments were disproved or the underlying allegations were dismissed." *Id.,* 128 N.J. at 180, 607 A.2d at 1262.

In the present case, the complaints in the Underlying Actions do not allege or claim any physical manifestations of emotional harm, the underlying plaintiffs have not claimed that they have experienced physical symptoms and injuries in any discovery provided, and they have not sought any damages from Defendants for the same.  Unlike the policy provisions addressed in *Voorhees,* the Sentinel Policies at issue here expressly require **physical** injury, sickness or disease and extend coverage to mental anguish only if it arises out of the physical symptoms themselves:

### G.    LIABILITY AND MEDICAL EXPENSES DEFINITIONS

***

5. "Bodily injury" means physical:
   a.  Injury;
   b.  Sickness; or
   c.  Disease
   sustained by a person and, if arising out of the above, mental anguish or death at any time.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 20.

Furthermore, unlike the homeowner's policy at issue in *Voorhees,* the Insuring Agreement contained in the Sentinel Policies expressly states that coverage will be afforded only if **damages** are sought in the lawsuit for such bodily injury (*e.g.,* physical injury, sickness or disease):

**Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to
    pay as damages because of "bodily injury", "property damage" or
    "personal and advertising injury" to which this insurance applies. We
    will have the right and duty to defend the insured against any "suit"
    seeking those damages. However, we will have no duty to defend the
    insured against any "suit" seeking damages for "bodily injury",
    "property damage" or "personal and advertising injury" to which this
    insurance does not apply.

Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 1 of 24.

Accordingly, because the underlying complaints at issue neither allege any physical
injuries or symptoms nor seek damages for the same, the plain and unambiguous language of the
Sentinel Policies controls and makes clear that Sentinel has no contractual duty to defend
Defendants unless and until that occurs.  Likewise, there simply is no coverage for "mental
anguish" alleged here, as it did not arise out of any physical injury, as opposed to discrimination
and sexual harassments as expressly alleged in the underlying complaints.

Much like the circumstances presented here, the New Jersey Appellate Division also has
considered whether an insurer was obligated to provide a defense to various employment-related
claims under its policy where the underlying complaint only included allegations that the
plaintiff was caused to "suffer severe and permanent injuries, losses and damages including but
not limited to emotional distress and mental anguish, humiliation, economic losses including but
not limited to lost wages, lost benefits and other losses and damages."  *U.S. Liab. Ins. Grp. v.*
*Sec. Ins. Co. of Hartford*, 381 N.J. Super. 211, 214, 885 A.2d 477, 480 (App. Div. 2005).  Citing
the New Jersey Supreme Court's decision in *SL Industries, Inc. v. American. Motorists Ins. Co.*,
128 N.J. 188, 607 A.2d 1266 (1992), the Appellate Division stated that the phrase "bodily
injury" is not ambiguous where a claim alleges "purely emotional distress, without physical
manifestations."  *Id.,* 318 N.J. Super. at 216-17, 885 A.2d at 481.  Thus, because the underlying

complaint did not allege physical manifestations and no underlying discovery responses were tendered showing the same, the Court affirmed the granting of summary judgment to the insurer on the basis that there was no covered claim under the policy.  *Id.,* 318 N.J. Super. at 217, 885 A.2d at 482.[5]

In short, while the *Voorhees* court did find a duty to defend based on the facts and policy language before it, this case involves a completely different definition of "bodily injury," different Insuring Agreement language addressing when the contractual duty to defend is triggered, and different underlying facts (including the lack of any claims or assertions regarding the manifestation of physical symptoms).  Based on the facts of this case and the clear language of the Sentinel Policies, there quite simply is no duty to defend any claim here.  Moreover, as explained below, coverage for the various employment-related claims against Defendants is further barred by the plain language of the employer's liability exclusion contained in the Sentinel Policies as well as by virtue of the lack of a covered "occurrence" with respect to some or all of the claims at issue.[6]

---

[5] The New Jersey Supreme Court made clear in *SL Industries* that a former employee's claims of physical and mental pain and suffering, including humiliation, "loss of self-esteem, irritability and sleeplessness" do not constitute "physical manifestations" but rather "purely emotional injuries" not covered by the policy before it.  128 N.J. at 195, 205, 607 A.2d at 1270, 1275.  Moreover, the Court held that where only certain claims give rise to a duty to defend, there must be an apportionment and allocation made between defense costs for covered and uncovered claims.  128 N.J. at 216, 607 A.2d at 1280-81.  *See also New Jersey Mfg. Ins. Co. v. Vizcaino,* 392 N.J. Super. 366, 376, 920 A.2d 754, 760 (App. Div. 2007) (converting duty to defend to duty to reimburse for defense costs to the extent insured found liable for a covered claim).

[6] Even if emotional distress claims without allegations of physical symptoms could give rise to a duty to defend certain counts in the Underlying Actions – which they do not, such non-economic damages are not recoverable under the New Jersey Consumer Fraud Act and could not give rise to a defense obligation for the same.  *See Cole v. Laughey Funeral Home,* 376 N.J. Super. 135, 869 A.2d 457 (App. Div. 2005).

C.   **VARIOUS CLAIMS IN THE UNDERLYING ACTIONS FALL WITHIN THE CLEAR AND UNAMBIGUOUS EMPLOYER'S LIABILITY EXCLUSION**

As explained in Sentinel's own motion for summary judgment, even assuming the plaintiffs in the Underlying Actions had stated a claim for "bodily injury," which they have not, the various NJLAD and negligence claims against Defendants would be excluded from coverage under the Employer's Liability Exclusion.  Plaintiffs in the Underlying Actions allege that they were treated like employees, and they assert various statutory claims seeking relief based upon that employment status, including reinstatement of employment, back pay and benefits, front pay and benefits, and other employment related damages.  Hartley Dec. Ex. F ¶ 28, Wherefore Clause at p. 13; Ex. G ¶ 30, Wherefore Clause.  *See also Thomas v. County of Camden,* 386 N.J. Super. 582, 902 A.2d 327 (App. Div. 2006) (various remedies sought under NJLAD applied only to the employer-employee relationship).

Under the Sentinel Policies, claims for "bodily injury" are excluded from coverage where the injury is "to an 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . ." Hartley Dec. Exs. A-E at Form SS 00 08 04 05 at page 4 of 24.

New Jersey courts interpret "arising out of" expansively.  *See The One James Plaza Condo. Ass'n, Inc. v. Rsui Grp., Inc.,* 2015 WL 7760179, at *6 n. 8 (D.N.J. Dec. 2, 2015) (quoting *American Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998).

In *American Motorists Ins. Co. v. L–C–A Sales Co.*, the New Jersey Supreme Court determined that "whether specific acts of harassment or discrimination took place outside the workplace… is of no consequence because such conduct nevertheless would have arisen out of the employment relationship between [defendant and victim]".  *American Motorists Ins. Co. v. L-C-A Sales Co.,* 155 N.J. 29, 42, 713 A.2d 1007, 1013 (1998); *see also Scottsdale Ins. Co. v.*

18

*Scholl-Fassnacht*, 2000 WL 875693, at *2 (E.D. Pa. June 26, 2000), *aff'd sub nom. Scottsdale Ins. Co. v. Fassnacht*, 261 F.3d 493 (3d Cir. 2001) (even where employee was off duty and not actually working at the time, claims were held to be within employment and noting that "[t]here is binding precedent holding that employee exclusions . . . unambiguously eliminate coverage when there is a causal connection between the claimant's employment and the injury").

Thus, even if the complaints in the Underlying Actions had sought damages for bodily injury (which they did not), the underlying plaintiffs' claims for harassment and wrongful discharge and associated employment-related NJLAD remedies are considered "arising out of" employment regardless of the fact that they occurred on a business trip to try and encourage other shooting victims to become clients of the Benedetto Firm and are precluded from coverage. *American Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41, 713 A.2d 1007, 1013 (1998) (wrongful discharge claim barred from coverage because of "arising out of and in the course of employment").[7]

---

[7] For the reasons set forth in Hartford's motion for summary judgement, to the extent Defendants are alleged to have acted with knowledge and consent of Mr. Groff's conduct, ratified his sexual misconduct, took retaliatory action against underlying plaintiffs and/or acted deliberately and fraudulently in connection with Mr. Groff's sexual harassment of underlying plaintiffs, such claims do not constitute an "occurrence" under the Sentinel Policies for which there is any duty to defend or indemnify. *See* Bonner Dec. Ex. H at 19-21; Hartley Dec. Ex. F, ¶¶ 7-8, 50, 72-74, 77, 80-82; Ex. G, ¶¶ 8-9. 93, 102. 104, 107-109, 111-112. While the claims against Mr. Groff are not at issue on Defendants' motion for partial summary judgment, it is beyond cavil that the allegations concerning his egregious and reprehensible conduct and harassment are not accidental and resulted in causing probable and expected harm.

## **CONCLUSION**

For the foregoing reasons, Sentinel respectfully requests the Court deny Defendants

motion for partial summary judgment and grant Sentinel's summary judgment motion, together

with such further relief as this Court deems proper.

Dated:  White Plains, New York
         August 25, 2020

MENZ BONNER KOMAR & KOENIGSBERG LLP


By:      */s/ Patrick D. Bonner*
         Patrick D. Bonner, Jr.
         (pbonner@mbkklaw.com)

One North Lexington Avenue, Suite 1550
White Plains, New York 10601
Tel.: (914) 949-0222

*Attorneys for Plaintiff Sentinel Insurance Company, Ltd.*