# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

SENTINEL INSURANCE COMPANY,      :
LTD.,      :
          **Plaintiff,**      :
       v.      :
CONRAD J. BENEDETTO,      :
**individually and doing**      :
**business as THE LAW OFFICES OF**      :
**CONRAD J. BENEDETTO, and JOHN**      :
**GROFF,**      :
         **Defendants.**      :

Civil No. 19-20142 (RMB/AMD)

CONRAD J. BENEDETTO, THE LAW      :
OFFICES OF CONRAD J. BENEDETTO,      :
and JOHN GROFF,      :
         **Plaintiffs,**      :
       v.      :
SENTINEL INSURANCE COMPANY,      :
LTD., et al.,      :
         **Defendants.**      :

### CONRAD J. BENEDETTO AND THE LAW OFFICES OF CONRAD' J. BENEDETTO'S REPLY TO SENTINEL INSURANCE COMPANY'S RESPONSE TO THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Sentinel Insurance Company's Response to the Motion for Partial Summary Judgment filed by Conrad J. Benedetto and the Law Offices of Conrad J. Benedetto argues that same should be denied because of a perceived procedural defect by failing to attach documents to their Motion.

Sentinel Insurance Company is correct in stating that "the duty to defend is determined by comparing the allegations contained in the underlying complaints in the Underlying Actions to the terms of the policy". However, the Motion for Partial Summary Judgment identified the underlying complaints as Exhibits. This satisfied the requirements of the Rule. If, for any reason, the

complaints were not so attached, they are being attached as Exhibits "A" and "B" to this reply. Perhaps more importantly, Sentinel Insurance Company's argument is completely disingenuous.

Sentinel Insurance Company and the moving parties both filed Motions for Summary Judgment in accordance with the Court's directive, without discovery being conducted as the interpretation of a policy is a legal issue to be decided by the Court. There are no facts in dispute. Either the policy provides a duty to defend or it does not. Both sides agree that the issue turns on the how the law defines "personal injury" for the purposes of the policy.

Moreover, as there are no material facts in dispute, even if the Court were to deny the Partial Motion for Summary Judgment based on any purported procedural defect, it still must rule upon Sentinel's Motion for Summary Judgment on the merits. If the Court denies Sentinel's Motion it must be based on the determination that the Benedetto parties are entitled to a defense under the Sentinel policy, at the very least. This is true regardless of whether the Benedetto parties ever filed their own Motion.

Respectfully submitted,

**THE LAW OFFICES OF CONRAD J. BENEDETTO**

BY:  *S/ CONRAD J. BENEDETTO, ESQUIRE*
**Conrad J. Benedetto, Esquire**
**1615 South Broad Street**
**Philadelphia, PA  19240**
**Telephone number: 215-389-1900**
**Email: benedettolegalassociates@gmail.com**
**Pro Se and attorney for the**
**Law Offices of Conrad J. Benedetto**

Date:  August 27, 2020

# EXHIBIT "A"

Matthew A. Luber, Esq. – NJ ID # 017302010
  mal@njlegal.com
Kaitlyn R. Grajek, Esq. – NJ ID # 208202016
  krg@njlegal.com
McOMBER & McOMBER, P.C.
54 Shrewsbury Avenue
Red Bank, NJ 07701
(732) 842-6500 Phone
(732) 530-8545 Fax

Brian E. Claypool – NJ PHV Pending
  brian@claypoollawfirm.com
The Claypool Law Firm
4 East Holly Street, Suite 201
Pasadena, California 91103
(626) 345-5480 Phone
(626) 787-1042 Fax

*Attorneys for Plaintiff Brian Nunez*

| | |
|---|---|
| BRIAN NUNEZ,<br><br>       Plaintiff,<br><br>   vs.<br><br>THE LAW OFFICES OF CONRAD J. BENEDETTO, JOHN GROFF, CONRAD J. BENEDETTO, ESQUIRE, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.:<br><br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff Brian Nunez ("Plaintiff Nunez") ("Plaintiff"), by way of Complaint against Defendant The Law Offices of Conrad J. Benedetto ("Benedetto Firm"), Defendant John Groff ("Defendant Groff"), and Defendant Conrad J. Benedetto, Esquire ("Defendant Benedetto") (collectively "Defendants") alleges as follows:

## PARTIES

1.     Plaintiff Nunez is an individual residing in Providence County in the State of Rhode Island.  He is a survivor of the Pulse Nightclub shooting and, in connection therewith, previously engaged the legal representation of Benedetto Firm and Benedetto.

2.     Benedetto Firm is a law office with locations in New Jersey, Pennsylvania, New York, Nevada, Maryland, Michigan, Louisiana and Arkansas.  At all times relevant hereto, Benedetto Firm 's office is located at 1233 Haddonfield Berlin Road, Suite 1, Voorhees, New Jersey 08043 was the "employer" of Defendants Groff and Benedetto as defined under the New Jersey Law Against Discrimination *N.J.S.A.* 10:5-1, *et seq.* ("NJLAD").

3.     Defendant Groff, at all times relevant hereto, is an individual employed by Benedetto Firm and Benedetto.  This claim is brought against Defendant Groff in his individual capacity and/or as an agent or servant of Benedetto Firm.

4.     Defendant Benedetto, at all times relevant hereto, is an individual and the owner of Benedetto Firm.  This claim is brought against Defendant Benedetto in his individual capacity and/or as an agent or servant of Benedetto Firm.  At all times relevant hereto, Defendant Benedetto is an "employer" as defined under the NJLAD.

5.     Defendant ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Benedetto Firm, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-retaliation policies of Benedetto Firm , and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced therein.

6.     Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-retaliation policies of Benedetto Firm and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

7.    Plaintiff alleges on information and belief that the Defendants at all times relative to this action were the agents, servants, partners, joint-venturers and employees of each of the other Defendants and, in doing the acts alleged herein, were acting with the knowledge and consent of each of the other Defendants in this action.

8.    Plaintiff alleges on information and belief that there exists, and at all times herein mentioned existed, a unity of interest and ownership between Defendants, such that any individuality and separateness between them has ceased, and each are the alter ego of the other.

9.    Plaintiff alleges on information and belief that adherence to the fiction of the separate existence of any Defendant as an entity distinct from any other would permit an abuse of the corporate privilege and would sanction fraud and promote injustice in that the acts alleged herein were the result of Defendants' acts, however, pursuant to some of the pertinent documents herein described, it appears that other Defendants benefitted from the acts alleged herein.

## NATURE OF THE ACTION

10.    This is an action brought by Plaintiff, a former client of Benedetto Firm and Defendant Benedetto, to recover damages and other relief for discrimination and retaliation under the NJLAD.

11.    Plaintiff seeks compensatory and punitive damages, lost wages, attorneys' fees, costs, and such other relief as the Court deems equitable and just.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

13.    On the night of June 12, 2016, Omar Mateen opened fire on patrons of Pulse Nightclub in Florida, killing 49 people and wounding 58 others ("Pulse Shooting").  Plaintiff Nunez and Nava were among the survivors of the Pulse Shooting.

14.    Defendant Groff, who introduced himself to Plaintiff as Benedetto Firm's Office Manager, solicited Plaintiff to be a client of Benedetto Firm and Benedetto almost immediately following the Pulse Shooting.

3

15.    Indeed, as an employee and agent of the New Jersey based Benedetto Firm and Benedetto, Defendant Groff made contact with Plaintiff Nunez and induced him into an attorney-client relationship with Defendant Benedetto.

16.    To do so, Defendant Groff advised Plaintiff that he had viable legal causes of action based on his presence at Pulse Nightclub during the Pulse Shooting.

17.    Upon reliance of Defendant Groff's aforementioned representations, Plaintiff retained Benedetto Firm and Defendant Benedetto as legal counsel to represent his interests in a lawsuit for damages stemming from the Pulse Shooting.

18.    As if in-person solicitation of victims was not bad enough, Defendant Groff also used other predatory means to gain the trust of prospective client mass shooting victims, Defendant Groff even created and maintained a Facebook group called "Survivors of Mass Shootings" whose stated purpose is to "help each other through our healing process, rather it be a few days or a lifetime."[1]

19.    By holding himself out on Facebook as a fellow victim, Defendant Groff gained access for Defendant Benedetto to a database of vulnerable victims.

20.    Soon after Plaintiff retained Benedetto Firm and Benedetto, Defendant Groff began texting Plaintiff, not for professional purposes relating to his case, but to establish a personal relationship with Plaintiff and to groom him for Defendant Groff's imminent sexual harassment in violation of the NJLAD.

21.    Although Plaintiff retained Benedetto Firm and Benedetto in early 2017, he heard nothing about his case for months.

22.    Thereafter, on October 1, 2017, Stephen Paddock opened fire on concertgoers at the Route 91 Harvest Music Festival in Las Vegas, Nevada ("Rt. 91 Shooting").

---

[1] *See* https://www.nytimes.com/2018/04/30/us/mass-shootings-lawyers.html

23. Following the Rt. 91 Shooting, Defendants used Plaintiff for their own financial benefit to recruit Rt. 91 Shooting victims to retain Benedetto Firm and Benedetto for legal representation.

24. Indeed, knowing Plaintiff's vulnerable condition and the emotional trauma with which he was continuing to cope post Pulse Shooting, Defendant Groff took advantage and convinced Plaintiff to travel with him to Nevada and California to speak with other shooting survivors and convince them to retain Benedetto Firm and Benedetto.

25. To facilitate this exploitative goal, Defendant Groff represented to Plaintiff that Defendants would pay for all lodging, transportation and food expenses in return for Plaintiff meeting with other shooting survivors and convincing them to retain Benedetto Firm and Benedetto.

26. Plaintiff originally believed the trips would be somewhat therapeutic, a way for shooting victims to connect and share their respective stories. However, Plaintiff quickly learned that he was being used.

27. Once in Nevada, Defendant Groff's demeanor changed, as did his interactions with Plaintiff.

28. Defendant Groff began to treat Plaintiff like an employee hired to recruit other shooting victims, advising "do your job and get other people to sign up."

29. On behalf of the Benedetto Firm, Defendant Groff even pressured Plaintiff Nunez to record a promotional video, essentially exploiting his victim story to recruit additional clients.

30. Although Plaintiff Nunez felt extremely uncomfortable recording the promotional video, he eventually acquiesced to Defendants' demands.

31. It also became clear to Plaintiff that Defendant Groff sought to use the trip as a way to sexually solicit shooting survivors, including but not limited to Plaintiff.

32. Specifically, Defendant Groff began flirting with and sexually harassing Plaintiff Nunez.

5

33.     When Plaintiff Nunez rebuked Defendant Groff's unwanted sexual advances, Defendant Groff retaliated against Plaintiff Nunez, threatening to withhold money for lodging, transportation, and food.

34.     The group continued to its next stop, California.

35.     The first stop was Riverside. Once in Riverside, Defendant Groff continued his behavior.

36.     With no money of his own and no way to get home, Plaintiff was forced to continue with Defendant Groff onto the next planned stop – Sacramento.

37.     Unfortunately, Defendant Groff continued his course of retaliation against Plaintiff on the way to Sacramento.

38.     Seemingly enraged that Plaintiff had rejected his unwanted sexual requests and advances, Defendant Groff began acting in a hostile and erratic manner.

39.     By way of example but not limitation, Defendant Groff drove like a madman through California, almost causing several accidents and resulting in Plaintiff hitting his head on the roof of the car. Defendant Groff also began to withhold money for food.

40.     Once on the trip together to Nevada and California, Defendant Groff's sexual advances toward Plaintiff became more direct and frequent.

41.     Defendant Groff repeatedly demanded sexual favors and retaliated when Plaintiff rejected him.

42.     Indeed, throughout what was supposed to be a professional relationship with Plaintiff, Defendant Groff sent Plaintiff sexually explicit text messages in attempts to entice Plaintiff to enter into a sexual relationship with him. Groff repeatedly made unwanted sexual advances towards Nunez.

43.     In these messages, Defendant Groff frequently discussed getting Plaintiff Nunez "drunk" so he could force himself sexually upon Plaintiff Nunez without consent, even stating "I don't like that word" when Plaintiff Nunez asked Defendant Groff to "stop."

6

44.    Indeed, under the guise of discussing Plaintiff' roles in meeting prospective clients for Benedetto Firm and Benedetto, Defendant Groff stated, "I go over it while you're in my room and I'm getting you drunk" to which Plaintiff Nunez responded "stop it" and "…keep it professional."



45.    These were not isolated incidents, as Defendant Groff regularly discussed getting Plaintiff drunk so he could take advantage of them sexually.

46.    Seemingly innocent and professional discussions between Plaintiff and Defendant Groff almost always turned sexually charged.

47.    Even worse, Defendant Groff used the vulnerable position Plaintiff was in to collect private information about Plaintiff to be used later as sexual blackmail, even stating "Angel and I are very close, he knows all my deep down secrets lmao I [sic] and I know his."

7

48.     Defendant Groff also asked Plaintiff Nunez if he would "be interested in a sugar daddy," even asking that they discuss terms "on the phone" to avoid proof of his unlawful conduct.

49.     Even worse, Plaintiff was not the first victim of Defendant Groff's sexual harassment and retaliation.

50.     Indeed, Defendant Groff has a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Benedetto Firm and Benedetto are well-aware.

51.     By way of example but not limitation, on December 14, 2015, Javier Carrasquillo ("Mr. Carrasquillo"), a former client of Defendants, filed suit against Benedetto Firm and Benedetto relating to Defendants' disturbing and illegal conduct throughout their representation of him ("Carrasquillo Complaint"). A copy of the Carrasquillo Complaint is attached hereto as Exhibit 1.[2]

52.     The Carrasquillo Complaint details, among other claims, Defendant Groff's pattern of utilizing his position of authority as office manager and client point of contact for Benedetto Firm to prey on vulnerable prospective clients and entice them to enter into sexual relationships with him.

53.     Therein, Mr. Carrasquillo alleges that Defendant Groff promised that Benedetto Firm and Benedetto would assist with his legal issues if Mr. Carrasquillo and his girlfriend acquiesced to Defendant Groff's sexual advances and entered into a sexual relationship with him.

54.     Indeed, the facts of the Carrasquillo Complaint are analogous to those alleged by Plaintiff in this matter, down to the disturbing and pornographic images exchanged in text

---

[2] *See also*
https://www.nj.com/camden/index.ssf/2016/01/law_firm_manager_exploited_men_women_for_sex_lawsu.html

messages between Defendant Groff and Mr. Carrasquillo attached to the Carrasquillo Complaint as Exhibits B and C.

55.     Specifically, it is alleged therein that Defendant Groff sent sexually explicit photographs and text messages with sexually-charged language with requests for sexual favors to Mr. Carrasquillo and his girlfriend.

56.     As set forth in the messages in Exhibit B to the Carrasquillo Complaint, just as he did with Plaintiff in this matter, Defendant Groff solicited Mr. Carrasquillo's representation for Benedetto Firm and Benedetto, when Mr. Carrasquillo was in an extremely vulnerable position.

57.     Specifically, Defendant Groff contacted Mr. Carrasquillo on Facebook writing, "you need some legal help? I manage a law office maybe I can help."

58.     Indeed, akin to his initial solicitation of Plaintiff, Defendant Groff utilized his authority as office manager and client point of contact for Benedetto Firm to establish a relationship with Mr. Carrasquillo, retain him as a client for the firm, and exchange pornographic images with him.

59.     The Carrasquillo Complaint also alleged that Defendant Groff has an extensive criminal background, specifically:

> Mr. Groff is well known to be a convicted felon with at least 8 criminal convictions, including but not limited to thefy by illegal retention (6 counts) (Oct. 1992), followed by probation violation and termination in 1997; one conviction for issuing/passing a bad check over $200 (Sept. 1995); two additional convictions for issuing/passing bad check (Oct. 1995), followed by probation violation and termination in 1997; a CDS related offense (Oct. 1995), followed by probation violation and termination in 1997; thefy by deception in Pennsylvania (Aug. 1996); and; theft by deception in New Jersey (2 counts) (Nov. 1997). Mr. Groff's criminal history also includes 5 disorderly persons offenses: intimidation (1993); theft by deception (1994); theft of services (1994); bad check (no account) (1995); and; harassment (1998)…

9

Supporting documentation concerning Mr. Carrasquillo's allegations concerning Defendant Groff's criminal background is affixed to the Carrasquillo Complaint as Exhibit A.

60.     Despite this information, Benedetto Firm and Benedetto hired, retained, entrusted and authorized Defendant Groff to function as their office manager and main point of contact for clients.

61.     Unsurprisingly given his alleged criminal background, Defendant Groff engaged in unlawful and unethical practices while acting as the employed agent of Benedetto Firm and Benedetto and to the benefit of Benedetto Firm and Benedetto.

62.     Rather than protecting its clients and prospective clients from damage that foreseeably would be caused by Defendant Groff by terminating and/or disciplining him in any way, Benedetto Firm and Benedetto allowed Defendant Groff to continue his employment with Benedetto Firm.

63.     Even worse, despite knowing all of the claims set forth in the Carrasquillo Complaint, Benedetto Firm and Benedetto empowered and authorized Defendant Groff to continue soliciting, communicating directly with (and even attending overnight trips with) clients and prospective clients in 2016 and 2017.

64.     In essence, to serve their own economic self-interest, Benedetto Firm and Benedetto authorized Defendant Groff to continue recruiting mass shooting victims as clients.

65.     In addition to all the above acts of abuse of power by Defendant Groff, upon information and belief, he also threatened to negatively affect the case of another Pulse Shooting client, Orlando Torrez, to prevent him from reporting Defendant Groff's aforementioned sexual harassment of Plaintiff to the media.

66.     This lawsuit is meant to address the wrongs committed by Defendant Groff against Plaintiff and to mandate Defendant Groff's accountability once and for all.  This lawsuit carries the hope that it will inspire and give strength to those victims who could not, or do not, speak of their own experiences, to account for the dreams that were crushed long ago never to return, due to the retribution against those who spoke up.  Too often those with little or no voice or power have their dreams held hostage by the people who abuse their position to manipulate, rape and assault those they deem weak, helpless and without a real voice.  They are told to stay silent, or do exactly as told, or their career will suffer or never even get started.  Apologies are insufficient in these circumstances because the harm that is done cannot simply be cured with an apology by those who apologize simply because they have been caught.  Those who abuse their power such as Defendant Groff, and those who enable such individuals like Benedetto Firm and Benedetto, must be held accountable.  The time is now, and Plaintiff brings this action to do his part.

## COUNT ONE

## NJLAD: SEXUAL HARASSMENT AND DISCRIMINATION DUE TO GENDER (AS TO DEFENDANTS)

67.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

68.     Plaintiff was subjected to severe and pervasive instances of sexual harassment on account of his gender.

69.     The conduct would not have occurred but for Plaintiff's gender.

70.     Plaintiff's gender was the motivating factor in the decision to discriminate against Plaintiff.

71.     At all times relevant hereto, Defendant Benedetto is an "employer" and as the "owner of a place of public accommodation" as defined under the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1, *et seq.*

72.     As the employers and or supervisors of Defendant Groff, Defendant Benedetto is vicariously, strictly, and/or directly liable to Plaintiff pursuant to NJLAD, *N.J.S.A.* 10:5-1, *et seq.*, in that the affirmative acts of discrimination and harassment committed by Defendant Groff and agents and/or representatives of Defendant Benedetto occurred within the scope of employment; and/or Defendant Benedetto was deliberately indifferent, reckless, negligent and/or tacitly approved Defendant Groff's conduct; and/or Defendant Benedetto failed to create and/or have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of sexual harassment; and/or by having actual knowledge of the harassment to Plaintiff and failing to promptly and effectively act to stop it.

73.     Plaintiff and Defendants had a professional relationship wherein Defendant Groff engaged in sexual misconduct of a hostile nature during the professional relationship that was of a hostile nature and based on Plaintiff's gender. Defendant Groff's conduct was unwelcomed by Plaintiff, evidenced by him rejecting Defendant Groff, and severe. Plaintiff was unable to easily terminate the relationship with Defendant Groff because of Defendant Groff's employment at Defendant Benedetto, Plaintiff's legal representation. Plaintiff suffered and will continue to suffer emotional distress from Defendant Groff's continued sexual harassment.

74.     Here, there are sufficient allegations that Defendant Benedetto ratified Defendant Groff's sexual misconduct. Defendant Benedetto had actual knowledge in 2016 of Defendant Groff's dangerous sexual propensities and his previous sexual misconduct with clients. Despite having actual knowledge, Defendant Benedetto continued to employ Defendant Groff, did not supervise him, and allowed him ongoing unfettered access to potential and current clients, providing Defendant Groff the opportunity and authority to sexually harass Plaintiff. These acts

12

by Defendant Benedetto constitute ratification and makes them liable for Defendant Groff's sexual harassment of Plaintiff.

75.     As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit.    More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.   Reinstatement of employment and all benefits;
B.   Back pay and benefits;
C.   Front pay and benefits;
D.   Compensatory damages;
E.   Consequential damages;
F.   Reinstatement;
G.   Punitive damages;
H.   Prejudgment interest and enhancements to off-set negative tax consequences;
I.   Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.   Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;
K.   Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.   Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.   Ordering Defendants to undergo anti-discrimination training;
N.   Ordering Defendants to undergo anti-retaliation training;
O.   Ordering Defendants to undergo anti-harassment training;
P.   Ordering Defendants to undergo workplace civility training;
Q.   Ordering Defendants to undergo bystander intervention training;
R.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U.   Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.     Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.     Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

### NJLAD: RETALIATION/IMPROPER REPRISAL
### (AS TO DEFENDANTS)

76.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

77.     Defendants took retaliatory action against Plaintiff as set forth at length herein.

78.     Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the LAD pursuant to *N.J.S.A.* 10:5-12(d).

79.     As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit.   More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.     Reinstatement of employment and all benefits;
B.     Back pay and benefits;
C.     Front pay and benefits;
D.     Compensatory damages;
E.     Consequential damages;
F.     Reinstatement;
G.     Punitive damages;
H.     Prejudgment interest and enhancements to off-set negative tax consequences;
I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of

14

this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.      Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.      Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.      Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.      Ordering Defendants to undergo anti-discrimination training;

N.      Ordering Defendants to undergo anti-retaliation training;

O.      Ordering Defendants to undergo anti-harassment training;

P.      Ordering Defendants to undergo workplace civility training;

Q.      Ordering Defendants to undergo bystander intervention training;

R.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.      Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.      Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.      Such other relief as may be available and which the Court deems just and equitable.

## **COUNT THREE**
## **VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
## **(AS TO ALL DEFENDANTS)**

80.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

81.     The conduct described above constitutes violation of the New Jersey Consumer Fraud Act, "NJCFA") *N.J.S.A.* § 56:8-1 *et seq.*

82.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and ascertainable loss for which Defendants' are liable to Plaintiff, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such relief that the Court deems equitable and just.

## COUNT FOUR

### NEGLIGENT HIRING
### (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

83.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

84.    Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and hiring of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

85.    As a proximate result of the aforementioned negligent hiring by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT FIVE

### NEGLIGENT RETENTION
### (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

86.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

87.    Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and retention of Defendant Groff as an employee directly and

proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

88.     As a proximate result of the aforementioned negligent retention by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT SIX

### NEGLIGENT TRAINING
### (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

89.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

90.     Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and training of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

91.     As a proximate result of the aforementioned negligent training by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

17

## COUNT SEVEN

### NEGLIGENT SUPERVISION
### (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

92.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

93.    Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and supervision of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

94.    As a proximate result of the aforementioned negligent supervision by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT EIGHT

### NEGLIGENCE
### (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

95.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

96.    At all relevant times, Defendants Benedetto Firm and Benedetto owed a duty to use reasonable care in authorizing Defendant Groff to act as their agent.

97.    This included a duty to control Defendant Groff in his interactions with clients during meetings and other work functions that were taking place within the course and scope of his employment in order to prevent foreseeable harm.

18

98.     Prior to the sexual misconduct with Plaintiff, Defendants knew or had reason to believe Defendant Groff was likely to engage in sexual misconduct with clients he came into contact with during the course and scope of his employment.  Prior to the incident involving Plaintiff, Defendants possessed knowledge of Defendant Groff's propensity to engage in sexual misconduct; specifically, the 2016 lawsuit filed against Defendants based on Defendant Groff's sexual misconduct with clients. Knowledge of Defendant Groff's propensity to engage in sexual misconduct was possessed by Defendant's owners, officers, and employees. At all relevant times, Defendants maintained a supervisory position over Defendant Groff.

99.     By possessing knowledge of Defendant Groff's prior sexual misconduct, Defendants knew or should have known that Defendant Groff was unfit and that this unfitness created a particular risk to others.

100.    Defendants did not act in a reasonable manner by failing to investigate and terminate Defendant Groff and instead continued to allow him to meet with clients with the knowledge that there was a substantial likelihood for sexual misconduct.

101.    Defendant Groff's conduct with Plaintiff occurred within the course and scope of his employment. The contact between Plaintiff and Defendant Groff was generated by the employment relationship between Defendants and Defendant Groff.

102.    Defendant Benedetto Firm's and Defendant Benedetto's negligence in authorizing Defendant Groff to act as their agent was a substantial factor in causing Plaintiff's harm.

103.    It was foreseeable that Defendant Groff would engage in sexual misconduct if Defendant continued to allow Defendant Groff to have business meetings and other work related interactions with clients, including, but not excluded to direct communication with clients. At all relevant times, Defendants knew Defendant Groff was using his power and position to engage in sexual misconduct with clients and knew that this sexual misconduct would cause harm.

104.    Defendants failed to institute corrective measures clients coming into contact with Defendant Groff, including Plaintiff, from sexual misconduct despite Defendants possessing actual notice of Defendant Groff's sexually inappropriate behavior. Such acts and omissions

demonstrate a conscious disregard for the safety of others. Defendants were aware of the probable dangerous consequences of failing to remove or adequately supervise Defendant Groff. In failing to do so, Defendants acted with actual malice and with conscious disregard for Plaintiff's safety.

105.    As a direct and proximate result of Defendants' negligence, Plaintiff was a victim of Defendant Groff's unlawful sexual misconduct. Defendants' unlawful behavior has caused Plaintiff to suffer continuing damages, including but not limited to psychological and emotional issues.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

<u>COUNT NINE</u>

<u>GROSS NEGLIGENCE</u><br><u>(AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)</u>

106.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action

107.    As stated above, Defendants acted negligently towards Plaintiff. They had a duty of care that they breached which was the actual and proximate cause of Plaintiff's injuries.

108.    Defendants' negligent conduct rises to the level of gross negligence based on Defendants' extreme conduct.

109.    Defendants had actual knowledge that Defendant Groff engaged in sexual misconduct with previous clients by forcing them to enter a sexual relationship with him in return for Defendants' legal representation of them. There is no doubt that Defendants had actual knowledge of this unlawful conduct as they were named defendants in a 2016 lawsuit detailing Defendant Groff's sexual misconduct.

110.    Despite having actual knowledge of Defendant Groff's sexual misconduct with clients, Defendants continued to employ Defendant Groff as case manager, which allowed him unfettered access to potential and current clients that were in a vulnerable state as they faced legal trouble. Moreover, Plaintiff was in an extremely emotional state given his battle with trauma post Pulse shooting.

111.    Defendants' act of allowing Defendant Groff continued access to potential and current clients, gave Defendant Groff free reign to engage in a multitier abuse of power that victimized Plaintiff, and likely other clients.

112.    Defendant Groff abused the power provided to him as Defendants' case manager to 1) commit fraud and manipulation against Plaintiff to retain him as a client on behalf of the firm, 2) Defendant Groff took advantage of the socioeconomic difference between himself and Plaintiff, a young Hispanic lower/middle class gay man, to make him false promises of improving his life, 3) Defendant Groff then used his position to sexually harass Plaintiff, and 4) retaliate against Plaintiff when he rejected his sexual advances.

113.    Defendant Groff's multitier unlawful behavior and abuse was facilitated and encouraged by Defendants' willful and extreme misconduct in continuing to employ him, not properly supervising him, and allowing him full and unfettered access to potential and current clients.

114.    The conduct of Defendants was willful, malicious, conscious, extreme, and outrageous and warrants the imposition of punitive damages against them.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorneys whether or not there are any insurance agreement or policies under which any person

or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorneys with true copies of those insurance agreements or policies, including, but not limited to, and all declaration sheets. This demand shall include not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER & McOMBER, P.C.
*Attorneys for Plaintiff,*
*Javier Nava & Brian Nunez*

By: /s/ Matthew A. Luber
    Matthew A. Luber, Esq.

Dated:  October 22, 2018

The Claypool Law Firm
*Attorneys for Plaintiff,*
*Javier Nava & Brian Nunez*

By: /s/ Brian E. Claypool
    Brian E. Claypool, Esq.
    *Pro Hac Vice* Pending

Dated: October 22, 2018

## DESIGNATION OF TRIAL COUNSEL

Pursuant to *Rule* 4:25-4, MATTHEW A. LUBER, ESQUIRE and BRIAN E. CLAYPOOL, ESQUIRE (*pro hac vice* pending), are hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to *Rule* 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter and/or with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that is any of the foregoing statements made by me are willingly false, I am subject to punishment.

McOMBER & McOMBER, P.C.
*Attorneys for Plaintiff,*
*Javier Nava & Brian Nunez*

By: /s/ Matthew A. Luber _____
Dated:  October 22, 2018          Matthew A. Luber, Esq.


The Claypool Law Firm
*Attorneys for Plaintiff,*
*Javier Nava & Brian Nunez*

By: /s/ Brian E. Claypool _____
Dated: October 22, 2018          Brian E. Claypool, Esq.
                                 *Pro Hac Vice* Pending