[Docket Nos. 37, 38, and 42]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CONRAD J. BENEDETTO, THE LAW OFFICES OF CONRAD J. BENEDETTO, and JOHN GROFF, <br><br> Defendants. | Civil No. 19-20142(RMB/AMD) <br><br> **OPINION** |

APPEARANCES:

Menz Bonner Komar & Koenigsberg LLP
By: Patrick D. Bonner, JR., Esq.
125 Half Mile Road
Suite 200
Red Bank, NJ 07701
   *Attorney for Plaintiff*

The Law Offices of Conrad J. Benedetto
By: Conrad J. Benedetto, Esq.
1615 S. Broad Street
Philadelphia, PA 19148
   *Attorney for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

   Before the Court are Defendants Conrad J. Benedetto, The Law Offices of Conrad J. Benedetto, and John Groff's ("Defendants") Motion for Partial Summary Judgment [Docket No. 37] and Plaintiff Sentinel Insurance Company's ("Plaintiff" or

1

"Sentinel") Motion for Summary Judgment [Docket No. 38], as well as Defendants' Motion for Leave to File an Additional Brief [Docket No. 42][1]. For the reasons discussed herein, Defendants' Motion for Partial Summary Judgment [Docket No. 37] will be denied, Plaintiff's Motion for Summary Judgment [Docket No. 38] will be granted, and Defendants' Motion for Leave [Docket No. 42] will be denied as moot.

## I.  BACKGROUND

This dispute concerns the scope of coverage provided by general liability policies, which Plaintiff issued to Defendant Conrad Benedetto, doing business as The Law Offices of Conrad J. Benedetto. On November 13, 2019, Plaintiff filed this action seeking a declaratory judgment that its general liability policies did not provide for a duty to defend or indemnify Defendants in connection with several underlying actions [Docket No. 1], which are described below. Thereafter, Defendants filed a declaratory relief and breach of contract action against Sentinel in the Superior Court of New Jersey. [Docket No. 1-2]. Sentinel removed that action to this Court [see Docket No. 1], and the Court then consolidated that case [Conrad J. Benedetto

---

[1]  This is the lead case in a consolidated action. The member case, Conrad J. Benedetto et. Al. v. Sentinel Insurance, 20-cv-483, concerns the same parties and was initiated by the Defendants in the lead case. For the purposes of this Opinion and its related Order, the Court will refer to the parties by their designation in this lead action.

et. Al. v. Sentinel Insurance, 20-cv-483] with this action. [Docket No. 8].

Both cases concern whether the parties' general liability policies require Plaintiff to defend and indemnify Defendants in two underlying lawsuits filed against Defendants. These two cases, both filed in the Superior Court of New Jersey, are Brian Nunez v. The Law Offices of Conrad J. Benedetto, et al., Case No. CAM-L-003997-18 (N.J. Super. Ct., Camden Co.) ("Nunez Action"), and Javier Nava v. The Law Offices of Conrad J. Benedetto, et al., Case No. CAM-L-004588-18 (N.J. Super. Ct., Camden Co.) ("Nava Action") (collectively, the "Actions"). [Docket No. 38-3, at ¶ 5]. In these two cases, both Nava and Nunez were clients of the Law Offices of Conrad J. Benedetto. [Docket No. 37-1, at ¶ 3]. They each allege that Defendant John Groff, then an employee of the Law Offices of Conrad Benedetto, made a series of unwanted sexual advances and engaged in both sexual harassment and solicitation of sexual relations in exchange for legal services. [See id.; see also Docket No. 40-20, at ¶ 3]. Specifically, their lawsuits allege violations of the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Consumer Fraud Act ("NJCFA"), Negligent Hiring, Negligent Retention, Negligent Training, Negligent Supervision, Negligence, and Gross Negligence. [Docket Nos. 38-10 and 38-12]. Both actions are currently pending in state court.

3

In its present motion here, Defendants argue that Plaintiff's denial of coverage was improper. Under New Jersey law, Defendants contend, both the Nava Action and the Nunez Action fall within the terms of the liability policy, and defense is required. Plaintiff's motion, in contrast, argues that the agreements do not cover the Actions both because the claims are not covered whatsoever, and because the agreements' exclusions sections disclaims coverage for both employment and discrimination actions.

The parties signed an annual general liability policy beginning in October 2015, and continued to do so until October 2019. In relevant part, the 2015-2016, 2016-2017, and 2017-2018 agreements[2] all provide that:

> We (Sentinel) will pay those sums that the insured (The Law Offices of Conrad J. Benedetto) becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

[Docket Nos. 38-5, 38-6, and 38-7].

---

[2]  The Nava and Nunez Actions identify conduct that occurred between 2016 and October 2018. Therefore, the 2018-2019 agreement [Docket No. 38-8] and the 2019-2020 agreement [Docket No. 38-9] are not implicated in this matter.

> The agreements state that they apply:
>
> (1) To "bodily injury" and "property damage" only if:
>   (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>   (b) The "bodily injury" or "property damage" occurs during the policy period; and
>   (c) Prior to the policy period, no insured listed under Paragraph 1 of Section C. – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
> (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

[Id.]. The agreements further provide that:

> "Bodily injury" means physical:
>   (a)   Injury;
>   (b)   Sickness; or
>   (c)   Disease
>   sustained by a person and, if arising out of the above, mental anguish or death at any time.

[Id.]. The agreements define "property damage" as:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> Loss of use of tangible property that is not physically injured. All such loss of use shall be

5

>  deemed to occur at the time of "occurrence" that caused it.

[Id.]. The agreements also state that:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> (a) False arrest, detention or imprisonment;
> (b) Malicious prosecution;
> (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;
> (d) Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> (e) Oral, written or electronic publication of material that violates a person's right of privacy;
> (f) Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";
> (g) Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement";[3]

[Id.].

Finally, the agreements contain a series of exclusions. In relevant part, those exclusions provide that:

> This insurance does not apply to:
>
> a. Expected Or Intended Injury
>
>   (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

---

[3] An additional definition— "Discrimination or humiliation that results in injury to the feelings or reputation of a natural person"— is removed by a subsequent provision.

6

>    (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

>                              ***

>  e. Employer's Liability
>     "Bodily injury" to:
>     (1)  An "employee" of the insured arising out of and in the course of:
>         (a)  Employment by the insured; or
>         (b)  Performing duties related to the conduct of the insured's business . . . .

>                              ***

> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
> (2) To any obligation to share damages with or repay someone else who must pay damages because of that injury.

>                              ***

> r. Employment-Related Practices[4]
> "Personal and advertising injury" to:
> (1) A person arising out of any "employment-related practices";

>                              ***

> This exclusion applies:
>
>    (a) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during

---

[4] The liability agreements included an amendment which modified the original "employment-Related Practices" exclusion. The version included here reflects that amendment. [See e.g., Docket No. 38-7, at 101-02]

>       employment or after employment of that
>       person;
> (b)   Whether the insured may be liable as an
>       employer or in any other capacity; and
> (c)   To any obligation to share damages with or
>       replay someone else who must pay damages
>       because of the injury.

[Id.].

## II. ANALYSIS

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could

8

believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not

9

need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

Under New Jersey law[5], an insurance policy "is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). The Court must interpret the agreement's language "according to its plain and ordinary meaning." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992). If the terms are unclear, the Court must construe those terms in favor of the insured. Flomerfelt, 202 N.J. at 441. This construction is done to "give effect to the insured's reasonable expectations." Id. The Court must not, however, "write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989).

An exclusionary clause is presumptively valid and enforceable, so long as it is "specific, plain, clear, prominent, and not contrary to public policy." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997). Nevertheless, exclusions should be narrowly construed, and "if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that

---

[5] This Court sitting in diversity applies state law. The parties do not dispute that New Jersey law governs this dispute.

10

limits it." Flomerfelt, 202 N.J. at 442. The Court will also consider the "clear import and intent of [the] policy's exclusion." Id. (internal quotation marks omitted). In short, the Court will evaluate whether a fair interpretation of the language is ambiguous.

An insurer's duty to defend the insured "is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Voorhees, 128 N.J. at 173. If the claims in the underlying complaint are ambiguous, the Court must resolve that doubt in favor of coverage. Id. Coverage will depend on whether a covered claim is made, not how well it is made. Id.

Here, the question is whether the Nava and Nunez Actions include claims that give rise to Plaintiff's duty to defend. As noted above, these cases allege violations of the NJLAD and NJCFA, Negligent Hiring, Negligent Retention, Negligent Training, Negligent Supervision, Negligence, and Gross Negligence. [Docket Nos. 38-10 and 38-12]. Plaintiff contends that these claims are not covered by the liability agreement and that, at most, the underlying complaints assert claims excluded by the agreements' exclusions sections. Defendant argues, in contrast, that the Nava and Nunez plaintiffs allege Negligent Infliction of Emotional Distress, which requires "that the

11

emotional distress [be] so severe so as to result in physical manifestations of the distress." [Docket No. 37-2, at 4; Docket No. 39 at 10]. So, Defendants conclude, the Nava and Nunez plaintiffs necessarily allege bodily injuries caused by the insured, which requires an insurer to provide coverage under New Jersey law. [Id. citing Voorhees, 128 N.J. at 180]. The Court will now consider each in turn.

First, Plaintiff argues that the Nava and Nunez plaintiffs do not allege "bodily injury" in their underlying complaints. The Court agrees. As discussed above, the liability agreement defines "bodily injury" as "physical injury," "sickness," or "disease." The Nava and Nunez plaintiffs allege only emotional or psychological injuries. [See Docket Nos. 38-10, 38-11, and 38-12]. Thus, under a plain reading of the agreements, the Nava and Nunez plaintiffs do not claim bodily injury. The Court must also note that, although the agreements' definition sections include "mental anguish" as a form of bodily injury, those agreements clearly do so only in the context of mental anguish that "aris[es] out of" physical injury, sickness, or disease. The underlying complaints do not allege such injury.

Moreover, this interpretation is further supported by the New Jersey Supreme Court's opinion in SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188 (1992). Although that dispute concerned age discrimination, the Court specifically considered

12

"whether emotional distress unaccompanied by physical injuries can be deemed within the coverage of an insurance policy protecting against liability for bodily injuries." SL Indus., 128 N.J. at 202. It found that such allegations were not within coverage. Specifically, the Court concluded that "in the context of purely emotional distress, without physical manifestations, the phrase 'bodily injury' is not ambiguous. Its ordinary meaning connotes some sort of physical problem." Id. This Court will apply that same rationale here.

The SL Indus. opinion further instructed courts to analyze the phrase "bodily injury" on a case-by-case basis to find whether alleged injuries are "sufficiently akin to physical injuries to render the term 'bodily injury' ambiguous." Id. at 204. In analyzing this case, the Court finds that the Nava and Nunez Actions do not allege emotional injuries that are "sufficiently akin" to physical injuries. Those actions concern the suffering of emotional distress due to sexual harassment, and do not involve "bodily injury" under the liability agreements. Accordingly, the agreements' "bodily injury" section does not impose coverage here.

Second, Plaintiff contend that the Actions do not allege "physical injury to tangible property." As an initial matter, however, the Court notes that Defendants have made no argument that the Actions assert claims for property damages. But the

13

Court is uncertain whether Defendants have conceded this point because their brief in opposition to Plaintiff's Motion for Summary Judgment [Docket No. 39] is a nearly identical copy of their brief in support of their own Motion for Partial Summary Judgment [Docket No. 37-2]. In either event, the Court agrees with Plaintiff and finds that the Nava and Nunez Actions do not include claims for property damage. Under a plain reading of both the liability agreements and the relevant complaints, the Nava and Nunez Actions' allegations of emotional distress are not property damage.

Third, Plaintiff argues that the Nava and Nunez complaints do not seek damages for "personal and advertising injury." As with the property damage analysis, the Court again notes that Defendants have made no arguments on this point. Nevertheless, the Court will still consider these grounds. As discussed above, "personal and advertising injury," under the agreement, is limited to seven categories. [See supra at 6].  None of these seven categories are implicated in the Nava and Nunez complaints. Therefore, the Court finds that the Actions do not allege personal and advertising injuries.

Having found that the complaints in the Nava Action and Nunez Action do not assert claims for bodily injury, property damage, or personal and advertising injury, the Court need not address Plaintiff's two remaining arguments— (1) that the

underlying complaints do not involve an "occurrence" or triggering event under the agreement and (2) that, to the extent the Actions do allege an otherwise covered injury, those claims fall within various exclusions in the policy. The Court is satisfied that the agreements do not require coverage on other grounds. Accordingly, the Court finds that Plaintiff is not required to defend or indemnify Defendant in the Nava and Nunez Actions under the parties' general liability policy.

### III. CONCLUSION

Thus, for the foregoing reasons, Defendant's Motion for Partial Summary Judgment [Docket No. 37] is DENIED and Plaintiff's Motion for Summary Judgment [Docket No. 38] is GRANTED. In addition, Defendant's Motion for Leave [Docket No. 42] is DENIED AS MOOT. An appropriate Order accompanies this Opinion.

Dated: March 22, 2021         s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge