# EXHIBIT "B"

CAM-L-004588-18   05/14/2019 10:55:15 AM   Pg 1 of 33 Trans ID: LCV20198471145

**LAFFEY, BUCCI & KENT LLP**
BY: Brian D. Kent, Esquire (ID No. 041892004)
1435 Walnut Street, 7th Floor
Philadelphia, PA 19102
(215) 399-9255
Fax (215) 241-8700

---

| | |
|---|---|
| Javier Nava<br>530 South Oxalis Avenue<br>Orlando, Florida 32807<br>                          Plaintiff,<br><br>            v.<br><br>The Law Offices of Conrad J. Benedetto<br>1233 Haddonfield Berlin Road, Suite 1<br>Voorhees, New Jersey 08043<br><br>          and<br><br>John Groff<br>1233 Haddonfield Berlin Road, Suite 1<br>Voorhees, New Jersey 08043<br><br>          and<br><br>Conrad J. Benedetto, Esquire<br>1233 Haddonfield Berlin Road, Suite 1<br>Voorhees, New Jersey 08043<br><br>          and<br><br>ABC Corporations 1 – 5 (fictitious entities)<br><br>          and<br><br>John Does 1 – 5 (fictitious persons)<br><br>                  Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION<br>CAMDEN COUNTY<br><br><br>DOCKET NO.: CAM-L-004588-18<br><br><br>***FIRST AMENDED COMPLAINT AND JURY DEMAND*** |

---

## CIVIL ACTION COMPLAINT

    Plaintiff JAVIER NAVA hereby submits his Complaint against Defendants THE LAW

OFFICES OF CONRAD J. BENEDETTO; JOHN GROFF; CONRAD J. BENEDETTO,

ESQUIRE; ABC CORPORATIONS 1 – 5, and JOHN DOES 1 – 5, and each of them, and allege as follows:

## PARTIES

1.    Plaintiff JAVIER NAVA ("Plaintiff") is an adult individual with a place of residence of 530 South Oxalis Avenue, Orlando, Florida 32807.

2.    THE LAW OFFICES OF CONRAD J. BENEDETTO ("Benedetto Firm") is a law office with locations in New Jersey, Pennsylvania, New York, Nevada, Maryland, Michigan, Louisiana and Arkansas. At all times relevant hereto, Benedetto Firm's office is located at 1233 Haddonfield Berlin Road, Suite 1, Voorhees, New Jersey 08043 was the "employer" of Defendants Groff and Benedetto as defined under the New Jersey law.

3.    JOHN GROFF ("Defendant Groff"), at all times relevant hereto, is an individual employed by Benedetto Firm and Benedetto. This claim is brought against Defendant Groff in his individual capacity and/or as an agent or servant of Benedetto Firm.

4.    CONRAD J. BENEDETTO, ESQUIRE ("Defendant Benedetto"), at all times relevant hereto, is an individual and the owner of Benedetto Firm. This claim is brought against Defendant Benedetto in his individual capacity and/or as an agent or servant of Benedetto Firm.

5.    Defendant ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Benedetto Firm, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-retaliation policies of Benedetto Firm, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced therein.

6.    Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-retaliation policies of Benedetto Firm and are

currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

7.      Plaintiff alleges on information and belief that the Defendants at all times relative to this action were the agents, servants, partners, joint-venturers and employees of each of the other Defendants and, in doing the acts alleged herein, were acting with the knowledge and consent of each of the other Defendants in this action.

8.      Plaintiff alleges on information and belief that there exists, and at all times herein mentioned existed, a unity of interest and ownership between Defendants, such that any individuality and separateness between them has ceased, and each are the alter ego of the other.

9.      Plaintiff alleges on information and belief that adherence to the fiction of the separate existence of any Defendant as an entity distinct from any other would permit an abuse of the corporate privilege and would sanction fraud and promote injustice in that the acts alleged herein were the result of Defendants' acts, however, pursuant to some of the pertinent documents herein described, it appears that other Defendants benefitted from the acts alleged herein.

## NATURE OF THE ACTION

10.     This is an action brought by Plaintiff, former client of Benedetto Firm and Defendant Benedetto, to recover damages and other relief for discrimination and retaliation under the New Jersey Law Against Discrimination ("NJLAD"); Negligent Hiring; Negligent Retention; Negligent Training; Negligence; and Gross Negligence.

11.     Plaintiff seeks compensatory and punitive damages, lost wages, attorneys' fees, costs, and such other relief as the Court deems equitable and just.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

13. On June 12, 2016, Omar Mateen opened fire on patrons of Pulse Nightclub in Florida, killing 49 people and wounding over 50 more ("Pulse Shooting"). Plaintiff was among the survivors of the Pulse Shooting.

14. Sometime immediately thereafter Defendant Groff introduced himself to Plaintiff as Benedetto Firm's Office Manager for the purpose of soliciting Plaintiff to be a client of Benedetto Firm and Defendant Benedetto.

15. As an employee and agent of the New Jersey based Benedetto Firm and Defendant Benedetto, Defendant Groff made contact with Plaintiff and induced him into an attorney-client relationship with Defendant Benedetto and Benedetto Firm.

16. Defendant Groff advised Plaintiff that he had viable legal causes of action based on his presence at Pulse Nightclub during the Pulse Shooting to induce Plaintiff into an attorney-client relationship with Defendant Benedetto and Benedetto Firm.

17. Upon reliance of Defendant Groff's aforementioned representations, Plaintiff retained Benedetto Firm and Defendant Benedetto as legal counsel to represent his interests in a lawsuit for damages stemming from the Pulse Shooting.

18. Defendant Groff directly and in-person solicited victims of the Pulse Shooting. Defendant Groff also used other predatory means to gain the trust of prospective clients who are victims of mass shootings, including, but not limited to, creating and maintaining a Facebook group called "Survivors of Mass Shootings" whose stated purpose is to "help each other through our healing process, rather it be a few days or a lifetime."[1]

19. By holding himself out on Facebook as a fellow victim, Defendant Groff gained access to a database of vulnerable victims for Defendant Benedetto and Benedetto Firm to solicit.

---

[1] *See* https://www.nytimes.com/2018/04/30/us/mass-shootings-lawyers.html

20.     Defendant holds himself out on Facebook as living in Pennsauken, New Jersey, being from Camden, New Jersey and working for the Law Offices of Conrad J. Benedetto.

21.     Soon after Plaintiff retained Defendant Benedetto and Benedetto Firm, Defendant Groff began texting Plaintiff, not for professional purposes relating to their cases, but to establish a personal relationship with Plaintiff and to groom him for his imminent sexual harassment in violation of the NJLAD.

22.     Although Plaintiff retained Defendant Benedetto and Benedetto Firm in early 2017, he heard nothing about his case for months.

23.     On October 1, 2017, Stephen Paddock opened fire on concertgoers at the Route 91 Harvest Music Festival in Las Vegas, Nevada ("Rt. 91 Shooting").

24.     Following the Rt. 91 Shooting, Defendants used Plaintiff for their own financial benefit to recruit Rt. 91 Shooting victims to retain Defendant Benedetto and Benedetto Firm for legal representation.

25.     Defendant Groff knowingly took advantage of the vulnerable condition and emotional trauma Plaintiff continued to cope with post Pulse Shooting and convinced him to accompany Defendant Groff on trips to Nevada and California to speak with other shooting survivors and convince them to retain Defendant Benedetto and Benedetto Firm.

26.     To facilitate this exploitative goal, Defendant Groff represented to Plaintiff that Defendants would pay for all lodging, transportation and food expenses on these trips in return for Plaintiff meeting with other shooting survivors and convincing them to retain Defendant Benedetto and Benedetto Firm.

27.     Plaintiff originally believed these trips may be therapeutic -- a way for shooting victims to connect and share their respective stories. However, Plaintiff quickly learned that he was being used.

28.     Once in Nevada, Defendant Groff's demeanor changed, as did his interactions with other survivors.

29.     Defendant Groff began to treat survivors like employees hired to recruit other shooting victims, demanding "do your job and get other people to sign up."

30.     On behalf of the Benedetto Firm, Defendant Groff pressured Plaintiff to record a promotional video, exploiting his story and experience as a victim of the Pulse Shooting to recruit additional clients.

31.     Plaintiff felt extremely uncomfortable recording the promotional video, however, he eventually acquiesced to Defendants' demands.

32.     Defendant Groff used the trips as a way to sexually solicit shooting survivors, including but not limited to Plaintiff.

33.     Specifically, Defendant Groff began making sexual advances and sexually harassing the survivors on the Nevada trip. When one survivor rebuked Defendant Groff's sexual advance, Defendant Groff retaliated against the survivor, threatening to withhold money for lodging, transportation, and food.

34.     Plaintiff was not aware of Defendant Groff's sexual advances and harassment toward other survivors on the Nevada trip, so he agreed to travel with the group again to California.

35.     Once in Riverside, California, Defendant Groff began to directly subject Plaintiff to repeated sexual advances.

36.     Like previous unwelcome sexual advances by Defendant Groff toward others, Plaintiff rejected Defendant Groff's sexual advances, and Defendant Groff retaliated against Plaintiff.

37.     With no money of his own and no way to get home, Plaintiff was forced to continue with Defendant Groff onto the next planned stop – Sacramento, California.

38.     Defendant Groff continued his course of retaliation and harassment against Plaintiff on the way to Sacramento.

39.     Seemingly enraged that Plaintiff had rejected his sexual requests and advances, Defendant Groff began acting in an aggressive, hostile and erratic manner.

40.     By way of example but not limitation, Defendant Groff drove in a reckless and dangerous manner through California, almost causing several accidents and resulting in Plaintiff hitting his head on the roof of the car. Defendant Groff also began to withhold money for food.

41.     Throughout the trip to California, Defendant Groff's sexual advances and demands toward Plaintiff became more direct and frequent.

42.     Defendant Groff demanded sexual favors and retaliated when Plaintiff rejected the same.

43.     Throughout what was supposed to be a professional relationship with Plaintiff, Defendant Groff sent Plaintiff sexually explicit text messages and pornographic images in attempts to entice Plaintiff to enter into a sexual relationship with him. Text messages from Defendant Groff were sent from his cellular phone number that has a New Jersey Area Code of 856.

44.     In these messages, Defendant Groff frequently discussed getting Plaintiff "drunk" so he could force himself sexually upon Plaintiff without consent, even stating "I don't like that word" when Plaintiff asked Defendant Groff to "stop."

45.     Indeed, under the guise of discussing Plaintiff's role in meeting prospective clients for Defendant Benedetto and Benedetto Firm, Defendant Groff stated, "I go over it while you're in my room and I'm getting you drunk" to which Plaintiff responded, "stop it" and "…keep it professional.

46.     These were not isolated incidents, as Defendant Groff regularly discussed getting Plaintiff drunk so he could take advantage of him sexually.

47.     By way of example but not limitation, Defendant Groff advised Plaintiff to "keep drinking" so "I can f*ck with you."

48.     Seemingly innocent and professional discussions between Plaintiff and Defendant Groff almost always turned sexually charged. For instance, on one occasion Defendant Groff advised Plaintiff that he wanted to get his nails done with Plaintiff. Thereafter Defendant Groff explained it would be so "you can't scratch me" when performing sexual acts on each other.

49.     Defendant Groff then texted pornographic images to Plaintiff.

50.     By way of example but not limitation, Defendant Groff texted Plaintiff a pornographic image of a man performing oral sex on another man. This was not the only sexually explicit photograph Defendant Groff forwarded to Plaintiff. Defendant Groff regularly sent pornographic images of male genitals to Plaintiff in conjunction with sexually charged conversation, sexual demands and/or sexual advances.

51.     Upon sending Plaintiff pornographic images of a man with whom Defendant Groff claimed to have engaged in sexual intercourse, Defendant Groff advised Plaintiff, "He would put a hurting on you took me a while to get used to that" and attempted to again lure Plaintiff into sexual intercourse, stating "I'm hoping you will let me relax you later between us."

52.     In further attempts to induce and/or coerce Plaintiff into a sexual relationship, Defendant Groff sent Plaintiff screen shots of text messages from an individual supposedly giving a positive review of Defendant Groff's abilities concerning "s*cking d*ck," stating "see what I do?"

53.     Plaintiff, concerned about facing additional retaliation from Defendant Groff, attempted to diffuse the situation and ignore his blatant sexual advances, to which Defendant Groff responded, "bitch answer."

54.     Defendant Groff also sent Plaintiff a photograph of him with a younger man

laying together, stating "I can make it happen. I'm a freak."

55.     In response, Plaintiff rejected Defendant Groff, stating, "I'm a good boy..." to which Defendant Groff stated "f*ck that" and sent Plaintiff a picture of a man apparently performing oral sex on Defendant Groff.

56.     Defendant Groff continued bragging about his sexual exploits. In response, Plaintiff stated "U [sic] are danger..." to which Defendant Groff replied "Nah just know how to relax a guy. Lights out, s*ck it nice and slow and let you bust. Trust me..."

57.     Defendant Groff also stated he wanted to "prove" his sexual skill to Plaintiff, to which Plaintiff replied, "I believe you ... you don't need to prove nothing."

58.     Rather than backing off, Defendant Groff continued hounding Plaintiff, to which Plaintiff replied that Defendant Groff was just his friend.

59.     In response, Defendant Groff stated "Come on pa, just once, between us. Confidential just want to satisfy both of us, we kill the lights so its dark as f*ck and you just lay back and let me s*ck your d*ck and if you wanted to get your a** eaten I will do that too ... I'm hungry as shit."

60.     Again, Plaintiff refused Defendant Groff's advances, stating "I'm good.. I don't need satisfaction ... we are friends!"

61.     Plaintiff continued, "Thanks for the offert [sic] but nop [sic] I'm not food ... but serius, [sic] I want to stay friends as now .. I don't want sex."

62.     Defendant Groff ignored Plaintiff's rejection and continued pursuing a sexual relationship with him.

63.     Again, Plaintiff stated "I don't want sex ..."

64.     Defendant Groff replied, "I'm not saying have sex I am saying let me s*ck you off that's it. Between 2 friends."

65.     Plaintiff continued to rebuke Defendant Groff's advances, "That's oral sex and I don't want it…"

66.     Defendant Groff then incessantly asked Plaintiff to "come in" to Benedetto Firm to "talk."

67.     When Plaintiff refused and asked Defendant Groff to "let [it] go," Defendant Groff continued his aggressive and incessant sexual advancements and harassment.

68.     Despite Plaintiff's clear and numerous rebukes of his advances, Defendant Groff refused to acquiesce, even joking about being rejected, stating "Angel just hit me up and was like ewww stop it lmao little b*tch."

69.     Even worse, Defendant Groff used the vulnerable positions of Plaintiff and other victims on the trip to collect private information about the victims on the trip to be used later as sexual blackmail, even stating "Angel and I are very close, he knows all my deep down secrets lmao I [sic] and I know his."

70.     Plaintiff was not the first victim of Defendant Groff's sexual harassment and retaliation.

71.     Defendant Groff has a history of criminal conduct, fraudulent behavior, unlawful intimidation, sexual harassment and retaliation of which Defendant Benedetto and Benedetto Firm are well-aware.

72.     By way of example but not limitation, on December 14, 2015, Javier Carrasquillo ("Mr. Carrasquillo"), a former client of Defendants, filed suit against Defendant Benedetto and Benedetto Firm relating to Defendants' disturbing and illegal conduct throughout their

representation of him ("Carrasquillo Complaint"). A copy of the Carrasquillo Complaint is attached hereto as Exhibit 1. [2]

73. The Carrasquillo Complaint details, among other claims, Defendant Groff's pattern of utilizing his position of authority as office manager and client point of contact for Benedetto Firm to prey on vulnerable prospective clients and entice them to enter into sexual relationships with him.

74. Therein, Mr. Carrasquillo alleges that Defendant Groff promised that Benedetto Firm and Benedetto would assist with his legal issues if Mr. Carrasquillo and his girlfriend acquiesced to Defendant Groff's sexual advances and entered into a sexual relationship with him.

75. Indeed, the facts of the Carrasquillo Complaint are analogous to those alleged by Plaintiff in this matter, down to the disturbing and pornographic images exchanged in text messages between Defendant Groff and Mr. Carrasquillo attached to the Carrasquillo Complaint as Exhibits B and C.

76. Specifically, it is alleged therein that Defendant Groff sent sexually explicit photographs and text messages with sexually-charged language with requests for sexual favors to Mr. Carrasquillo and his girlfriend.

77. As set forth in the messages in Exhibit B to the Carrasquillo Complaint, just as he did with Plaintiff in this matter, Defendant Groff solicited Mr. Carrasquillo's representation for Defendant Benedetto and Benedetto Firm, when Mr. Carrasquillo was in an extremely vulnerable position.

---

[2] *see also*
https://www.nj.com/camden/index.ssf/2016/01/law_firm_manager_exploited_men_women_for_sex_lawsu.html

78.     Specifically, Defendant Groff contacted Mr. Carrasquillo on Facebook writing, "you need some legal help? I manage a law office maybe I can help."

79.     Indeed, akin to his initial solicitation of Plaintiff, Defendant Groff utilized his authority as office manager and client point of contact for Benedetto Firm to establish a relationship with Mr. Carrasquillo, retain him as a client for the firm, and send pornographic images to him.

80.     The Carrasquillo Complaint also alleged that Defendant Groff has an extensive criminal background, specifically:

> "Mr. Groff is well known to be a convicted felon with at least 8 criminal convictions, including but not limited to theft by illegal retention (6 counts) (Oct. 1992), followed by probation violation and termination in 1997; one conviction for issuing/passing a bad check over $200 (Sept. 1995); two additional convictions for issuing/passing bad check (Oct. 1995), followed by probation violation and termination in 1997; a CDS related offense (Oct. 1995), followed by probation violation and termination in 1997; theft by deception in Pennsylvania (Aug. 1996); and; theft by deception in New Jersey (2 counts) (Nov. 1997). Mr. Groff's criminal history also includes 5 disorderly persons offenses: intimidation (1993); theft by deception (1994); theft of services (1994); bad check (no account) (1995); and; harassment (1998)…"

Supporting documentation concerning Mr. Carrasquillo's allegations concerning Defendant.

81.     Despite this information, Benedetto Firm and Defendant Benedetto hired, retained, entrusted and authorized Defendant Groff to function as their office manager and main point of contact for clients.

82.     Defendant Groff engaged in unlawful and unethical practices while acting as the employed agent of Benedetto Firm and Defendant Benedetto and to the benefit of Benedetto Firm and Defendant Benedetto.

83.     Rather than protecting its clients and prospective clients from damage that foreseeably would be caused by Defendant Groff by terminating and/or disciplining him in any

way, Benedetto Firm and Defendant Benedetto allowed Defendant Groff to continue his employment with Benedetto Firm.

84. Knowing all of the claims set forth in the Carrasquillo Complaint, Benedetto Firm and Defendant Benedetto empowered and authorized Defendant Groff to continue soliciting and communicating directly with (including attending overnight trips with) clients and prospective clients in 2016 and 2017.

85. To serve their own economic self-interest, Benedetto Firm and Defendant Benedetto authorized Defendant Groff to continue recruiting mass shooting victims as clients.

86. In addition to all the above acts of abuse of power by Defendant Groff, upon information and belief, he also threatened to negatively affect the case of another Pulse Shooting client, Orlando Torrez, to prevent him from reporting Defendant Groff's aforementioned sexual harassment of Plaintiff to the media.

## COUNT ONE

## NJLAD: SEXUAL HARASSMENT AND DISCRIMINATION DUE TO GENDER (AS TO DEFENDANTS)

87. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

88. Plaintiff was subjected to severe and pervasive instances of sexual harassment on account of his gender.

89. The conduct would not have occurred but for Plaintiff's gender.

90. Plaintiff's gender was the motivating factor in the decision to discriminate against him.

91. At all times relevant hereto, Defendant Benedetto is an "employer" and as the "owner of a place of public accommodation" as defined under the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1, *et seq.*

92.     As the employers and or supervisors of Defendant Groff, Defendant Benedetto is vicariously, strictly, and/or directly liable to Plaintiff pursuant to NJLAD, *N.J.S.A.* 10:5-1, *et seq.*, in that the affirmative acts of discrimination and harassment committed by Defendant Groff and agents and/or representatives of Defendant Benedetto occurred within the scope of employment; and/or Defendant Benedetto was deliberately indifferent, reckless, negligent and/or tacitly approved Defendant Groff's conduct; and/or Defendant Benedetto failed to create and/or have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of sexual harassment; and/or by having actual knowledge of the harassment to Plaintiff and failing to promptly and effectively act to stop it.

93.     Plaintiff and Defendants had a professional relationship wherein Defendant Groff engaged in sexual misconduct of a hostile nature during the professional relationship that was of a hostile nature and based on Plaintiff's gender. Defendant Groff's conduct was unwelcomed by Plaintiff and severe. Plaintiff was unable to easily terminate the relationship with Defendant Groff because of Defendant Groff's employment by Defendant Benedetto and Benedetto Firm, who served as Plaintiff's legal representation. Plaintiff suffered and will continue to suffer emotional distress from Defendant Groff's continued sexual harassment.

94.     Here, there are sufficient allegations that Defendant Benedetto and Benedetto Firm ratified Defendant Groff's sexual misconduct. Defendant Benedetto had actual knowledge in 2016 of Defendant Groff's dangerous sexual propensities and his previous sexual misconduct with clients. Despite having actual knowledge, Defendant Benedetto continued to employ Defendant Groff, did not supervise him, and allowed him ongoing unfettered access to potential and current clients, providing Defendant Groff the opportunity and authority to sexually harass Plaintiff. These

acts by Defendant Benedetto and Benedetto Firm constitute ratification and makes them liable for Defendant Groff's sexual harassment of Plaintiff.

95. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

    A.    Reinstatement of employment and all benefits;

    B.    Back pay and benefits;

    C.    Front pay and benefits;

    D.    Compensatory damages;

    E.    Consequential damages;

    F.    Reinstatement;

    G.    Punitive damages;

    H.    Prejudgment interest and enhancements to off-set negative tax consequences;

    I.    Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

    J.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M. Ordering Defendants to undergo anti-discrimination training;

N. Ordering Defendants to undergo anti-retaliation training;

O. Ordering Defendants to undergo anti-harassment training;

P. Ordering Defendants to undergo workplace civility training;

Q. Ordering Defendants to undergo bystander intervention training;

R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.  Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

## NJLAD: SEXUAL HARASSMENT AND DISCRIMINATION DUE TO SEXUAL ORIENTATION (AS TO DEFENDANTS)

96.  Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

97.  Plaintiff was subjected to severe and pervasive instances of sexual harassment on account of his sexual orientation.

98.  The conduct would not have occurred but for Plaintiff's sexual orientation.

99.  Plaintiff's sexual orientation was a motivating factor in the decision to discriminate against him.

100.  At all times relevant hereto, Defendant Benedetto is an "employer" and as the "owner of a place of public accommodation" as defined under the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1, *et seq.*

101.  As the employers and or supervisors of Defendant Groff, Defendant Benedetto is vicariously, strictly, and/or directly liable to Plaintiff pursuant to NJLAD, *N.J.S.A.* 10:5-1, *et seq.*, in that the affirmative acts of discrimination and harassment committed by Defendant Groff and agents and/or representatives of Defendant Benedetto occurred within the scope of employment; and/or Defendant Benedetto was deliberately indifferent, reckless, negligent and/or tacitly approved Defendant Groff's conduct; and/or Defendant Benedetto failed to create and/or have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability

of sexual harassment; and/or by having actual knowledge of the harassment to Plaintiff and failing to promptly and effectively act to stop it.

102.    Plaintiff and Defendants had a professional relationship wherein Defendant Groff engaged in sexual misconduct of a hostile nature during the professional relationship that was of a hostile nature and based on Plaintiff's sexual orientation. Defendant Groff's conduct was unwelcomed by Plaintiff and severe. Plaintiff was unable to easily terminate the relationship with Defendant Groff because of Defendant Groff's employment by Defendant Benedetto and Benedetto Firm, who served as Plaintiff's legal representation. Plaintiff suffered and will continue to suffer emotional distress from Defendant Groff's continued sexual harassment.

103.    Here, there are sufficient allegations that Defendant Benedetto and Benedetto Firm ratified Defendant Groff's sexual misconduct. Defendant Benedetto had actual knowledge in 2016 of Defendant Groff's dangerous sexual propensities and his previous sexual misconduct with clients. Despite having actual knowledge, Defendant Benedetto continued to employ Defendant Groff, did not supervise him, and allowed him ongoing unfettered access to potential and current clients, providing Defendant Groff the opportunity and authority to sexually harass Plaintiff. These acts by Defendant Benedetto and Benedetto Firm constitute ratification and makes them liable for Defendant Groff's sexual harassment of Plaintiff.

104.    As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.   Reinstatement of employment and all benefits;

B.   Back pay and benefits;

C.   Front pay and benefits;

D.   Compensatory damages;

E.   Consequential damages;

F.   Reinstatement;

G.   Punitive damages;

H.   Prejudgment interest and enhancements to off-set negative tax consequences;

I.   Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.   Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.   Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.   Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.   Ordering Defendants to undergo anti-discrimination training;

N.   Ordering Defendants to undergo anti-retaliation training;

O.   Ordering Defendants to undergo anti-harassment training;

P.   Ordering Defendants to undergo workplace civility training;

Q.   Ordering Defendants to undergo bystander intervention training;

R.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.      Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.      Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.      Such other relief as may be available and which the Court deems just and equitable.

## COUNT THREE

### NJLAD: RETALIATION/IMPROPER REPRISAL
### (AS TO DEFENDANTS)

105.      Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

106.      Defendants took retaliatory action against Plaintiff as set forth at length herein.

107.      Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the LAD pursuant to *N.J.S.A.* 10:5-12(d).

108.    As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.    Reinstatement of employment and all benefits;

B.    Back pay and benefits;

C.    Front pay and benefits;

D.    Compensatory damages;

E.    Consequential damages;

F.    Reinstatement;

G.    Punitive damages;

H.    Prejudgment interest and enhancements to off-set negative tax consequences;

I.    Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.    Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

K.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.      Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.      Ordering Defendants to undergo anti-discrimination training;

N.      Ordering Defendants to undergo anti-retaliation training;

O.      Ordering Defendants to undergo anti-harassment training;

P.      Ordering Defendants to undergo workplace civility training;

Q.      Ordering Defendants to undergo bystander intervention training;

R.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.      Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.      Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.      Such other relief as may be available and which the Court deems just and equitable.

## COUNT FOUR

## NEGLIGENT HIRING (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

109. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

110. Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and hiring of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

111. As a proximate result of the aforementioned negligent hiring by Defendants Benedetto Firm and Defendant Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Benedetto Firm and Defendant Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT FIVE

## NEGLIGENT RETENTION (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

112. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

113. Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and retention of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

114. As a proximate result of the aforementioned negligent retention by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT SIX

### NEGLIGENT TRAINING (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

115. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

116. Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and training of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

117. As a proximate result of the aforementioned negligent training by Defendants Benedetto Firm and Defendant Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT SEVEN

## NEGLIGENT SUPERVISION (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

118. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

119. Defendant Benedetto Firm's and Defendant Benedetto's negligence, gross negligence, reckless conduct and supervision of Defendant Groff as an employee directly and proximately caused Plaintiff to be subjected to violations of the NJLAD, including but not limited to discrimination, sexual harassment and retaliation.

120. As a proximate result of the aforementioned negligent supervision by Defendants Benedetto Firm and Benedetto, and acts and omissions set forth herein, Plaintiff has sustained damages and will, in the future, so suffer.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants Benedetto Firm and Benedetto, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT EIGHT

## NEGLIGENCE (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

121. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

122. At all relevant times, Defendants Benedetto Firm and Benedetto owed a duty to use reasonable care in authorizing Defendant Groff to act as their agent.

123. This included a duty to control Defendant Groff in his interactions with clients during meetings and other work functions that were taking place within the course and scope of his employment in order to prevent foreseeable harm.

124.    Prior to the sexual misconduct with Plaintiff, Defendants knew or had reason to believe Defendant Groff was likely to engage in sexual misconduct with clients he came into contact with during the course and scope of his employment. Prior to the incident involving Plaintiff, Defendants possessed knowledge of Defendant Groff's propensity to engage in sexual misconduct; specifically, the 2016 lawsuit filed against Defendants based on Defendant Groff's sexual misconduct with clients. Knowledge of Defendant Groff's propensity to engage in sexual misconduct was possessed by Defendant's owners, officers, and employees. At all relevant times, Defendants maintained a supervisory position over Defendant Groff.

125.    By possessing knowledge of Defendant Groff's prior sexual misconduct, Defendants knew or should have known that Defendant Groff was unfit and that this unfitness created a particular risk to others.

126.    Defendants did not act in a reasonable manner by failing to investigate and terminate Defendant Groff and instead continued to allow him to meet with clients with the knowledge that there was a substantial likelihood for sexual misconduct.

127.    Defendant Groff's conduct with Plaintiff occurred within the course and scope of his employment. The contact between Plaintiff and Defendant Groff was generated by the employment relationship between Defendants and Defendant Groff.

128.    Defendant Benedetto Firm's and Defendant Benedetto's negligence in authorizing Defendant Groff to act as their agent was a substantial factor in causing Plaintiff's harm.

129.    It was foreseeable that Defendant Groff would engage in sexual misconduct if Defendant continued to allow Defendant Groff to have business meetings and other work-related interactions with clients, including, but not excluded to direct communication with clients. At all relevant times, Defendants knew Defendant Groff was using his power and position to engage in sexual misconduct with clients and knew that this sexual misconduct would cause harm.

130. Defendants failed to institute corrective measures clients coming into contact with Defendant Groff, including plaintiff, from sexual misconduct despite Defendants possessing actual notice of Defendant Groff's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard for the safety of others. Defendants were aware of the probable dangerous consequences of failing to remove or adequately supervise Defendant Groff. In failing to do so, Defendants acted with actual malice and with conscious disregard for Plaintiff's safety.

131. As a direct and proximate result of Defendants' negligence, Plaintiff was a victim of Defendant Groff's unlawful sexual misconduct. Defendants' unlawful behavior has caused Plaintiff to suffer continuing damages, including but not limited to psychological and emotional issues.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT NINE

## GROSS NEGLIGENCE (AS TO DEFENDANT BENEDETTO FIRM AND DEFENDANT BENEDETTO)

132. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

133. As stated above, Defendants acted negligently towards Plaintiff. They had a duty of care that they breached which was the actual and proximate cause of Plaintiff's injuries.

134. Defendants' negligent conduct rises to the level of gross negligence based on Defendants' extreme conduct.

135. Defendants had actual knowledge that Defendant Groff engaged in sexual misconduct with previous clients by forcing them to enter a sexual relationship with him in return

for Defendants' legal representation of them. There is no doubt that Defendants had actual knowledge of this unlawful conduct as they were named defendants in a 2016 lawsuit detailing Defendant Groff's sexual misconduct.

136.    Despite having actual knowledge of Defendant Groff's sexual misconduct with clients, Defendants continued to employ Defendant Groff as case manager, which allowed him unfettered access to potential and current clients that were in a vulnerable state as they faced legal issues. Moreover, Plaintiff was in an extremely emotional state given his battle with trauma post Pulse shooting.

137.    Defendants' act of allowing Defendant Groff continued access to potential and current clients, gave Defendant Groff free reign to engage in a multitier abuse of power that victimized Plaintiff, and likely other clients.

138.    Defendant Groff abused the power provided to him as Defendants' case manager to 1) commit fraud and manipulation against Plaintiff to retain them as clients on behalf of the firm, 2) Defendant Groff took advantage of the socioeconomic difference between himself and Plaintiff to make him false promises of improving his lives, 3) Defendant Groff then used his position to sexually harass Plaintiff, and 4) retaliate against Plaintiff when he rejected his sexual advances.

139.    Defendant Groff's multitier unlawful behavior and abuse was facilitated and encouraged by Defendants' willful and extreme misconduct in continuing to employ him, not properly supervising him, and allowing him full and unfettered access to potential and current clients.

140.    The conduct of Defendants was willful, malicious, conscious, extreme, and outrageous and warrants the imposition of punitive damages against them.

**WHEREFORE**, Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

LAFFEY, BUCCI & KENT, LLP

BY: _____
BRIAN D. KENT, ESQUIRE
Attorney for Plaintiff Javier Nava

DATED: <u>May 14, 2019</u>

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## DEMAND FOR COMPLIANCE WITH N.J. COURT RULES 1:5-1(a) AND

## 4:174(c)

TAKE NOTICE that the undersigned attorney, counsel for Plaintiff, hereby demands, pursuant to the provisions of R.1:5-1(a) and 4:17-4(c), that each party serving pleadings or interrogatories and receiving responses thereto shall serve copies of all such pleadings, interrogatories, and responses thereto upon the undersigned, and further TAKE NOTICE that this is a continuing demand.

## DESIGNATION OF TRIAL COUNSEL

Brian D. Kent, Esquire is hereby designated trial counsel for Plaintiff John Doe.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorneys whether or not there are any insurance agreement or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorneys with true copies of those insurance agreements or policies, including, but not limited to, and all declaration sheets. This demand shall include not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Demand is hereby made for fully responsive answers to Form C and Form C1 Interrogatories appearing in Appendix II to the Rules of Court.

## RULE 4:5-1 CERTIFICATION

I, Brian D. Kent, of full age, do certify that I am the attorney for the plaintiff herein and

that to my knowledge there are no other actions or arbitrations pending as a result of the incidents described in the foregoing Complaint.

LAFFEY, BUCCI & KENT, LLP

BY: _____
BRIAN D. KENT, ESQUIRE
Attorney for Plaintiff Javier Nava

DATED: May 14, 2019

**LAFFEY, BUCCI & KENT LLP**
BY: Brian D. Kent, Esquire (ID No. 041892004)
1435 Walnut Street, 7th Floor
Philadelphia, PA 19102
(215) 399-9255
Fax (215) 241-8700

| | |
|---|---|
| Javier Nava<br><br>Plaintiff,<br><br>v.<br><br>The Law Offices of Conrad J. Benedetto;<br>John Groff; Conrad J. Benedetto, Esquire;<br>ABC Corporations 1 – 5 (fictitious entities);<br>and John Does 1 – 5 (fictitious persons)<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-004588-18<br><br>*CERTIFICATE OF SERVICE* |

## CERTIFICATION OF SERVICE

I, BRIAN D. KENT, certify as follows:

      1.     I am a Partner with the firm of Laffey, Bucci & Kent, LLP. On this date, I caused a copy of the within First Amended Complaint and Jury Demand and Certification of Brian D. Kent, Esq. to be delivered via Electronic Filing to the Clerk, Superior Court of New Jersey, Camden County and all counsel of record.

      2.     On this date, a courtesy copy of said documents were mailed to the Honorable Thomas T. Booth Jr., J.S.C., of the Superior Court of New Jersey, Law Division, Camden County.

      I certify that the forgoing statements made by me are true. I am aware that if any of the forgoing statements made by me are willfully false, I may be subject to punishment.

LAFFEY, BUCCI & KENT, LLP

BY: _____

BRIAN D. KENT, ESQUIRE
Attorney for Plaintiff Javier Nava

Date: <u>May 14, 2019</u>